568 A.2d 1289

**Polly Ann D'HUY, Appellee,**

v.

**Gerard J. D'HUY, Appellant.**

**Gerald J. D'HUY, Appellant,**

v.

**Polly Ann D'HUY, Appellee.**

Superior Court of Pennsylvania.

Argued June 19, 1989.

Filed Jan. 23, 1990.

Donald B. Corriere, Bethlehem, for appellant.

Michael C. Deschler, Bethlehem, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

BECK, Judge:

These consolidated appeals are from the final decree of the trial court disposing of two related actions between appellant, Gerald J. D'Huy, and appellee, Polly Ann D'Huy, formerly husband and wife. Both actions concerned wife's right to continue to receive certain monthly payments pursuant to their pre-divorce property settlement agreement despite her post-divorce cohabitation with another man. The trial court determined that wife was entitled to continue to receive the payments as required by the parties' agreement. We affirm.

Polly Ann D'Huy ("wife") and Gerald J. D'Huy ("husband") were married in 1958. On August 24, 1983, after having separated, husband and wife executed a Property Settlement Agreement ("Agreement") pursuant to which they resolved all aspects of their economic relationship.

Since both of the parties' children were then adults, the Agreement did not provide for child support, custody or visitation. The Agreement did provide for a division of the parties' holdings in real estate, consisting of three parcels: a residence, a business property and a third property. As to the first two parcels, the parties agreed that wife would transfer all of her interest therein to husband in exchange for a total payment of $40,000 at the time of execution of the Agreement. This amount represented only a small fraction of the actual value of these properties. As to the third property, the parties agreed that it would be deeded to their children. The Agreement further provided as follows:

THIRD: ALIMONY PAYMENTS TO WIFE

Commencing November 1, 1983, husband shall make periodic payments to wife for her support and mainte-nance (which obligation shall be separate and apart from and in addition to his obligations under the other provi-sions of this agreement) of the following amounts at the following times:

A. For One Hundred Four (104) weeks (two full years) husband shall pay the weekly amount of FOUR HUN-DRED ($400.00) DOLLARS per week payable every two (2) weeks or every four (4) weeks as the wife shall so elect.

B. From and after November 1, 1985 husband shall pay to wife the sum of ONE THOUSAND SIX HUNDRED FIFTY ($1,650.00) DOLLARS per month payable on the first day of each and every month for One Hundred Twenty (120) months (ten years) at which time all alimony payments shall terminate.

C. The wife acknowledges that said payments in this Article THIRD are in the way of alimony, support and maintenance and as such are taxable income to her and may be deductible by the husband.

D. In the event of husband's death, husband's estate shall continue to be liable for the payment of the wife's support and alimony. The executors may, at their sole option to be exercised at any time, pay in a lump sum all

payments thereafter falling due under this Article THIRD discounted to their present worth's [sic] (at the time of payment) at seven (7%) percent interest. To further secure the payment by the estate, husband agrees to provide life insurance as provided for in Article FOURTH as collateral.

Husband also agreed to pay wife's tuition and related educational expenses for two years, i.e. the time it would take her to complete a community college program she intended to pursue in order to rehabilitate herself.

Lastly, the Agreement provided that it was the entire agreement between the parties and would remain in full force and effect unless terminated by mutual written consent of the parties or, as to certain aspects of the Agreement, until their death. In this regard, the Agreement specifically provided "[i]n the event that the marriage of the parties hereto is terminated by divorce, this Agreement shall nevertheless remain in full force and effect, and shall survive the decree."

On February 13, 1984, the parties were divorced. The divorce decree stated "Incorporated herein and made a part of this Divorce Decree is the attached Property Settlement Agreement dated the 24th day of August, 1983 by and between Polly Ann D'Huy and Gerard D'Huy."

In November 1986, wife began living with another man, whom she intended to marry. In January 1987, wife filed a complaint seeking a declaratory judgment to the effect that her cohabitation and remarriage would not affect husband's obligation to continue making the payments due under sub-paragraph B above.[1] Husband answered wife's complaint and countered by filing a petition for special relief in which he sought to be relieved of making such payments. Husband contended that he had no further obligation to make these payments because they were alimony payments being made pursuant to a court order, i.e. the divorce

---

1. For purposes of clarity, we shall refer to the payments in dispute as the "sub-paragraph B payments" throughout the balance of this opinion.

decree, and thus should be terminated upon wife's cohabitation. Husband relied on Sections 501(e) and 507 of the Divorce Code. Pa.Stat.Ann. tit. 23, §§ 501(e), 507 (Purdon Supp.1989). Section 501(e) provides that remarriage of the recipient of court ordered alimony shall terminate the award of alimony. Section 507 states that a person who cohabits with person of the opposite sex not a member of the first person's immediate family within the degrees of consanguinity subsequent to divorce may not receive an award of alimony.

The trial court consolidated the two actions and rendered a decree nisi accompanied by an opinion. The court concluded that although the Agreement might well have merged with the divorce decree, thus taking on the attributes of a court order and losing its status as a contract, the payments pursuant to sub-paragraph B should nevertheless continue since they were in fact a distribution to wife of the remaining value of the parties' joint real estate interests and not alimony subject to termination under Sections 501(e) or 507. In reaching this conclusion, the trial court found the above-quoted portion of the Agreement ambiguous and considered parol evidence pertinent to the intent of the parties concerning the nature of the sub-paragraph B payments.

After post-trial motions were filed, the decree nisi was entered as a final judgment. The trial court en banc authored a new opinion in which it affirmed the original trial court disposition and concurred in its opinion, with some clarifications. The en banc court opined that the Agreement should not be seen as having merged with the decree, but agreed that in any event the sub-paragraph B payments were not alimony. The en banc court agreed that the payments were a distribution of property to wife over time which the parties intended to continue despite cohabitation by or remarriage of wife.

On appeal, husband argues that the Agreement merged into the divorce decree, thus losing its identity as a contract and becoming a court order providing for alimony which

must now terminate under Sections 501(e) and 507 of the Divorce Code. He also argues that the Agreement unambiguously provides that the payments under sub-paragraph B are alimony payments. Thus, he contends that the trial court erred in admitting parol evidence to construe the written terms of the Agreement.

Analysis of whether the Agreement has lost its identity as an enforceable contract by merging into the divorce decree and becoming a court order must begin with a review of this court's most recent and comprehensive opinion on the subject, *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988).[2] In *Sonder*, we were specifically confronted with a property settlement agreement that provided, *inter alia*, for child support. The agreement clearly revealed that the parties intended the agreement to remain an enforceable contract after divorce despite the incorporation of the agreement into the divorce decree. The decree itself stated that the agreement was incorporated therein, but not merged. The *Sonder* court held that the parties' intent must govern the status of the agreement. Since their intent was clearly that the agreement would remain an enforceable contract after divorce, not subject to modification by the court, this court affirmed the trial court's refusal to reduce the child support provided for in the agreement. *Id.*, 378 Pa.Superior Ct. at 495, 549 A.2d at 166. *See also McGough v. McGough*, 361 Pa.Super. 391, 522 A.2d 638 (1987), *allocatur denied*, 515 Pa. 623, 531 A.2d 431 (1988) (where parties' intent as expressed in agreement is to preserve agreement beyond divorce, and this intent is also expressed in divorce decree that incorporates but expressly does not merge agreement, agreement survives).

■ In the instant case, we are once again faced with an Agreement that is patently clear regarding the intent of the

2. We do not reach the question of whether the amendments to the Divorce Code concerning merger/incorporation, effective February 12, 1988, should be retroactively applied to this case. Although we requested supplemental briefing to the en banc court on this issue, on further consideration we find that since neither party raised the issue on appeal, this case is an inappropriate vehicle for deciding such an important question.

parties regarding survival of the Agreement after divorce. The Agreement nowhere uses the technical words of incorporation or merger. Instead, the Agreement states that it is intended to be a complete and integrated resolution of all economic issues between them and that it "shall ... remain in full force and effect, and shall survive ... divorce". The incorporation/merger issue arises solely because the decree itself provides that the Agreement is incorporated therein. The decree itself does not address merger. In other words, whereas in *Sonder* the decree provided for incorporation and non-merger, the decree here provides for incorporation but is silent as to merger.

Husband argues this case is distinct from *Sonder* and is analogous to *Commonwealth ex rel. Tokach v. Tokach,* 326 Pa.Super. 359, 474 A.2d 41 (1984). In *Tokach,* the parties entered into an agreement providing for child support. They later were divorced by entry of a decree that stated that the agreement was incorporated into the decree. Merger was not mentioned. The *Tokach* court held that the incorporation of the agreement into the decree had the effect of merging the agreement into the decree so that the child support obligation was now modifiable on a showing of changed circumstances. The court so concluded without any examination of the parties' intent. *Id.,* 326 Pa.Superior Ct. at 360–61, 474 A.2d at 41–42.

There is an apparent analogy between this case and *Tokach.* However, we cannot ascertain from the *Tokach* opinion itself whether there was in that case any other evidence of the parties' intent beyond the divorce decree's incorporation language. The opinion does not discuss anything other than this language. The only clue as to the intent of the parties appears in the concurrence to *Tokach,* authored by Judge Cavanaugh. There it is posited that since the *Tokach* parties' agreement contained language suggesting that the amount of child support agreed to depended upon the financial situation of the parties at the time of agreement, it was appropriate for the contract to be modified when their financial situation changed. In other

words, the parties' contractual intent was to permit modification by court order in this circumstance. *Id.* at 361, 424 A.2d at 42.

In contrast, the evidence in the case before us is overwhelmingly supportive of a finding that the parties did *not* intend their Agreement to merge into the decree and to be modifiable as a court order. The Agreement itself says it is the final binding agreement of the parties and shall survive divorce. The Agreement provides for neither incorporation or merger. The only evidence standing against this is the incorporation language of the decree.

To the extent that the holding in *Tokach* means that the terms of a settlement agreement that are incorporated into the divorce decree are thereby automatically merged into the decree, we overrule *Tokach*. To do otherwise would be to undermine the holding in *Sonder*, which focussed on the intent of the parties, and to ignore the dictates of other cases commanding the same analysis. *See, e.g., Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981); *Millstein v. Millstein*, 311 Pa.Super. 495, 457 A.2d 1291 (1983). We hold that where, as here, the parties to a property settlement agreement have clearly and unambiguously expressed in their agreement an intent that their agreement will survive the entry of the divorce decree, the agreement survives the divorce decree and is not merged therein even where the decree incorporates the terms of the agreement.[3] The property settlement agreement remains an enforceable contract, not subject to unilateral modification as a court order.

Our determination that the Agreement did not merge and remains an enforceable contract leads us to the next question posed by this case. That is, construing the Agreement as a contract, did these parties intend that the sub-para-

---

**3.** Appellant contends that there is language in the *Sonder* opinion suggesting that where a divorce decree incorporates a settlement agreement, unless the decree also expressly excludes merger, the agreement will be deemed merged without any further examination of the parties' intent. Our reading of *Sonder* convinces us that the court did not intend to create such a hard and fast rule. However, to the extent that there is language in *Sonder* suggesting that the decree must expressly reject merger, such language is disapproved.

graph B payments would terminate upon wife's cohabitation or remarriage. In deciding this question, we will address husband's argument that the trial court erred in admitting parol evidence to construe the Agreement.

Property settlement agreements between parties involved in or contemplating divorce are contracts like any others. They must be construed in accordance with the rules of law generally applicable to contract construction. *Trumpp v. Trumpp*, 351 Pa.Super. 205, 505 A.2d 601 (1985); *Kleintop v. Kleintop*, 291 Pa.Super. 491, 436 A.2d 223 (1981). These rules require that contractual terms that are clear and unambiguous must be given effect without reference to matters outside the contract. *Id.*, 291 Pa.Superior Ct. at 495, 436 A.2d at 225 (citing *In re Estate of Breyer*, 475 Pa. 108, 115, 379 A.2d 1305, 1309 (1977)). It is equally clear, however, that where the terms of the contract are ambiguous, the court is free to receive extrinsic evidence of the parties' intent, i.e. parol evidence, to resolve the ambiguity. *In re Estate of Breyer*, 475 Pa. at 116–17, 379 A.2d at 1309–10.

In this case the difficult issue is not what the parol evidence establishes as to the parties' intent, because once that evidence is considered, the parties' intent is unmistakable. They intended the payments to be a property distribution and they did not intend them to terminate. The difficult issue is whether the parol evidence should have been considered in the first place. We conclude that the trial court properly admitted parol evidence.

The question is whether the term "alimony" as used in paragraph third of the Agreement is ambiguous. We conclude that it is. We find support for this view in *Kohn v. Kohn*, 242 Pa.Super. 435, 364 A.2d 350 (1976). That case also addressed the question of the admissibility of parol evidence to interpret the word "alimony" in a separation agreement. In *Kohn*, the parties entered into a separation agreement that contained a provision requiring husband to pay wife payments labelled "alimony". The agreement also provided that in the event husband could not deduct these payments for tax purposes, the payments would be reduced.

However, the agreement also revealed that the payments were linked to wife's responsibility to support the parties' children, of whom wife had custody. For example, the payments were to cease upon the majority of one of the children. When husband later was awarded custody of the children, he ceased making the payments. When wife sought to enforce the agreement, husband contended that the payments, although designated "alimony", were really intended to be child support that would end when wife no longer supported the children. Wife countered that the payments were unambiguously alimony which should continue and that the trial court could not receive parol evidence to construe the agreement. The trial court agreed with wife, but this court reversed and directed the trial court to receive the parol evidence. *Id.*, 242 Pa.Superior Ct. at 441–42, 445–47, 364 A.2d at 352–53, 355–56.

The *Kohn* court concluded that although the agreement was facially clear, it contained a latent ambiguity, stating "[a]t the very least the term 'alimony', especially when used in separation agreements, may be described as latently ambiguous." The court found the ambiguity largely by examining the agreement as a whole and determining that it contained several provisions suggesting that the true intent might have been to provide for child support, not alimony. The court also noted that although parties to settlement agreements often structure the terms of their agreements to achieve certain tax goals, this structuring might not reveal and may actually conceal the true intent of the parties as to the nature of the payments being made. *See also VanKirk v. VanKirk*, 336 Pa.Super. 502, 485 A.2d 1194 (1984) (court applies standard rules of contract construction in interpreting alimony provisions of separation agreement).

In the instant case, we also find an ambiguity in the use of the word "alimony". The ambiguity arises both from an examination of the face of the Agreement and from the latently ambiguous nature of the word "alimony" when used in property settlement agreements.

Examining the Agreement as a whole, we find that it actually provides for two types of payments to wife, both styled "alimony". The first, provided for in sub-paragraph A of Article Third (quoted above), were to continue for two years. Later in the Agreement, husband agreed that he would also provide health and accident insurance to wife and pay her tuition and book costs for a two year community college program she intended to enter. These obligations were also to continue for two years. All of these payments appear to be aimed at giving wife a two year period in which to rehabilitate herself. Thus, this type of payment appears truly intended as alimony, paid to support wife while she became self-supporting. *See Pacella v. Pacella,* 342 Pa.Super. 178, 492 A.2d 707 (1985).

The second type of "alimony" payments are the sub-paragraph B payments, at issue in this case. They stand in sharp contrast to the first type. These payments are extended over a much longer period of time, namely, ten years. They cannot be reasonably construed to be aimed at enabling wife to become self-supporting, both because of their lengthy duration and because the first type of payment and husband's other obligations for the first two years after separation already provided for her rehabilitation.

It is, therefore, clear to us from the face of the Agreement that the term "alimony" is ambiguous. Used in its first context, it appears clearly to provide for alimony. The meaning to be ascribed in sub-paragraph B is different. When the same word, in this case "alimony", is used in an agreement to describe different concepts, we cannot say the meaning of the word is clear. While the first use of "alimony" is post-divorce spousal support, it is unclear what the parties intended when they also labelled the sub-paragraph B payments as "alimony". Further, parol evidence is admissible to determine if the parties' language was motivated by tax concerns or some other purpose. Parol evidence is required to interpret the meaning of the Agreement, which specifically states that the payments are "in

the way of alimony, support and maintenance and as such are taxable income to her [wife] and may be deductible by husband." Parol evidence will confirm the nature of the payments and whether they were designated as alimony to achieve a desired tax consequence. We note, as did the court in *Kohn*, that this use of "alimony" to achieve a tax consequence is commonplace in the drafting of property settlement/separation agreements.[4]

We conclude that the Agreement is ambiguous as to the true intended meaning of the word "alimony". Thus, we find that the trial court did not err in admitting parol evidence to resolve this ambiguity.

We need not tarry long in our review of the conclusion the trial court drew from the parol evidence it received. The trial court's conclusion is adequately supported by the record. The parol evidence consisted of deposition testimony of husband, wife and the accountant who advised both of them in structuring the Agreement. Both the wife and the accountant unequivocally stated that the sub-paragraph B payments were intended to be a pay out over time of wife's fifty percent interest in the parties' real estate. They indicated that the pay out was required because husband was unable to pay the amount required in a lump sum. Moreover, the accountant's work papers clearly reveal that the amount and duration of the payments was calculated on the basis of the value of wife's share of the real estate. There is no question that these payments were intended as a property distribution and not as alimony to support or rehabilitate wife.

Since the payments were intended as a property distribution, it is beyond cavil that the parties also did not intend them to terminate upon cohabitation or remarriage of wife. There is no indication in the Agreement itself that they would so terminate. It provides that they are to continue

---

4. Husband argues that *Kohn* is inapplicable because it was decided before the adoption of the Divorce Code. We disagree and find that the reasoning of *Kohn* is applicable. Despite the definition of alimony in the Code, the term as used in this Agreement contains the latent ambiguity that is described in *Kohn*.

even after husband's death and the general termination provision of the Agreement allows termination only upon mutual written consent of the parties. Moreover, it is completely unreasonable to imply an intent that the payments would cease on cohabitation or remarriage as neither circumstance has anything to do with wife's entitlement to her agreed share of the marital property.

In sum, husband and wife freely entered into an enforceable contract which the trial court properly construed to provide for a property distribution to wife that would continue despite cohabitation or remarriage.

Affirmed.

BECK, J.'s majority Opinion is joined by CIRILLO, President Judge, and CAVANAUGH, BROSKY and ROWLEY, JJ.

TAMILIA, J., files a dissenting statement.

JOHNSON, J., files a concurring and dissenting opinion.

MONTEMURO and POPOVICH, JJ., join Judge JOHNSON's concurring and dissenting opinion.

TAMILIA, Judge, dissenting.

I would remand this case to the panel with directions that original majority Opinion by Tamilia, J., be filed and that the review by the Court en banc be dismissed as improvidently granted. The review of this case by the Court en banc resulted on a certification by a majority of the panel, Beck, Tamilia, Johnson, JJ., with Tamilia dissenting to certification. In that certification, a proposed memorandum by Johnson, J., would have had the Court en banc consider the effect of amendments to the Divorce Code, section 401.1, having to do with modification of separation agreements. That issue was not raised in the original appeal and was not briefed before the Court en banc. Judge Beck, in her proposed en banc Opinion, held it was not to be considered. In writing to affirm, Judge Beck does not substantially

differ from the original proposed panel decision by Tamilia,, J., which was guided by *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988), as is the en banc Opinion. Having decided the basis upon which certification was granted is not reviewable, the only recourse is to return the case to the panel, with instructions, and find that en banc review was improvidently granted.

JOHNSON, Judge, concurring and dissenting.

In the trial court, Polly D'Huy (Wife) brought a declaratory judgment action seeking a determination as to her continuing right to receive alimony under the terms of a property settlement agreement. Gerard J. D'Huy (Husband) filed a petition for special relief seeking to terminate alimony payments required by the agreement. Husband appeals from the order which sustained Wife's position and refused to terminate the payments to Wife.

The property settlement agreement provided that Husband would pay alimony to Wife at the rate of $400 per week for two years and at the rate of $1,650 per month for ten years thereafter, with payments to continue to be made, or the balance due under the agreement to be paid out in a lump sum by Husband's estate in the event of his death prior to the completion of the agreement.

The trial court found that the $1,650 monthly payments were not actually alimony as defined by section 104 of the Divorce Code, 23 P.S. § 104, but rather represented a payout of Wife's share of marital property. The trial court therefore concluded that the payments were not subject to the termination provisions of Section 501(e) of the Divorce Code, 23 P.S. § 501(e) or the bar to alimony of Section 507 of the Code, 23 P.S. § 507, and that Wife's right to receive those payments was not affected by her admitted cohabitation or intended remarriage.

On appeal, Husband asks us to revisit the question of whether incorporation of the settlement agreement into a divorce decree results in the agreement losing its independent effect, thereby requiring the application of Sections

501 and 507 of the Code. Subsumed under this issue is whether the word "alimony" as set forth in the written property settlement agreement is ambiguous, thus permitting the introduction of parol evidence to explain its meaning.

I must respectfully dissent from the majority's insistence on revisiting *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988) along with those cases which preceded it, for the purpose of determining whether the agreement merged into the divorce decree or "lost its identity as an enforceable contract."

On May 11, 1989, this court entered an order listing this case for argument before the court en banc. The only reason for affording en banc consideration was to determine the applicability of Section 2 of the Act of February 12, 1988, P.L. 66, No. 13, effective immediately, 23 P.S. § 401.1, (Act 13). The majority declines to consider the impact of newly enacted § 401.1 since neither party raised the issue on appeal. I must disagree.

Firstly, the appeal was taken on December 24, 1987, some two months before the passage of Act 13, for the review of an order entered on December 1, 1987. It therefore is not surprising that the parties did not raise this issue initially. Secondly, the parties were directed to file supplemental briefs on the applicability of newly enacted Section 401.1 and they did so. Thirdly, the analysis in the majority opinion, slip opinion pages 5—9, of *Sonder v. Sonder, supra; McGough v. McGough,* 361 Pa.Super. 391, 522 A.2d 638 (1987); *Commonwealth ex rel. Tokach v. Tokach,* 326 Pa.Super. 359, 474 A.2d 41 (1984); *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); and *Millstein v. Millstein,* 311 Pa.Super. 495, 457 A.2d 1291 (1983), is exactly the kind of complexity which the legislature sought to obviate by passage of Act 13.

On February 12, 1988, Act 13 was approved, to take effect immediately, amending the Divorce Code, Act of April 2, 1980, P.L. 63, No. 26. The amendatory act added a new section to the Divorce Code, providing as follows:

Section 401.1   Effect of agreement between parties

(a) A party to an agreement regarding matters within the jurisdiction of the court under this act, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this act to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

. . . .

(c) In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court.

Appellant asks us to find the provisions of the agreement to be alimony.  We need not set forth those provisions here, since, in my judgment, Section 401.1(c) of the Code, above, controls this appeal.  There being no specific provision to the contrary in the agreement, the provisions regarding the disposition of existing property rights and interests between the parties, as well as alimony, are not subject to modification by the court.  Since there exists no ambiguity in those sections of the parties' agreement upon which Wife sought, and received, a declaratory judgment, we need not consider whether the word "alimony" contains any latent ambiguity.  Even if it did, I read Section 401.1(c) as being very clear as to the legislative intent.

Without passing upon the rationale of the trial court, I would find that the order from which these consolidated appeals are taken did not modify the agreement between the parties.  The order is in conformity with the statutory mandate.

Accordingly, I concur in the conclusion of the majority that the order should be affirmed.  I would do so, however, on the basis of the legislative declaration that agreements regarding the disposition of existing property rights shall

not be subject to modification by the court in the absence of a specific provision to the contrary.   23 P.S. § 401.1.

MONTEMURO and POPOVICH, JJ., join.