## MacHarg v. MacHarg

*James E. Douglas,* for plaintiff.
*Nicholas S. Kladitis,* for defendant.

FRAMPTON, *J.,* April 30, 1990 — This matter comes before the court on a petition of plaintiff, Ann M. MacHarg, now known as Ann M. Becker, wherein we entered a rule to show cause upon defendant, David P. MacHarg Jr., why he should

not be held in contempt for failure to pay alimony pursuant to a mutually entered into property-settlement agreement.

The facts which give rise to this petition are as follows: The parties were married. on December 29, 1967. Due to marital difficulties and irreconcilable differences the parties separated and entered into a separation and property-settlement agreement executed on June 16, 1982. A complaint in divorce was filed on June 22, 1982, and a divorce decree was entered on November 12, 1982, by the Honorable Francis J. Fornelli of this court.

Several sections of the separation and property-settlement agreement are pertinent to the resolution of this issue. Section 4.04 of that agreement entitled *Alimony/Temporary and Permanent,* states in subparagraph (a):

"Husband agrees to pay to the Wife as alimony, the sum of $2,500 per month for a period of 13 years from the date of the signing of this agreement.

"The parties hereto specifically recognize that the alimony payable to the Wife is based upon Husband's income of $100,000 per year. If, after three years, Husband's income shall be in excess of $150,000 and the cost of living as that term is defined by the Consumer Price Index or other comparable indexes in effect at the same time for Sharon, Pennsylvania, has risen 30 percent over the base year of 1982, then Wife shall have the right to seek an increase in alimony payments due her pursuant to the terms of this paragraph. Wife shall not have the right to seek any increase prior to January 1, 1985. At said increase hearing, if any, the parties hereto specifically agree that the trier of fact shall consider the following items: Her other earnings from whatever source, *her marital status and the income of her future husband,* if any,

inheritance and bequests; her needs at the time such as housing, food expense and utilities;. . ." (emphasis supplied)

In subparagraph (b) of section 4.04 of the separation and property-settlement agreement the parties stated:

"The payment to Wife of alimony as set forth in paragraph 4.04 subdivision (a) heretofore shall continue for a period of 13 years unless earlier terminated by the terms of any of the subdivisions hereunder or the first to happen of the following:

"(1) Death of Wife or death of Husband. It is specifically understood and agreed that this agreement shall become null and void in the event of Wife's death or Husband's death and this agreement herein for alimony or support is not intended to and shall not inure to the benefit of Wife's heirs or estate.

"(2) No decree in divorce having been entered within a reasonable time from the date of this agreement." .

In addition, section 2.03 of the agreement, which is entitled *Enforceability and Consideration,* states:

*"This Agreement shall forever survive any action for divorce and decree of divorce* and shall forever be binding and conclusive on the parties, and *independent legal action may be brought to enforce the terms of this Agreement by either Husband or Wife until it shall have been fully satisfied and performed. . ."* (emphasis supplied)

Finally, section 6.01 of the agreement, entitled *Reduction to Court Order,* states:

"The parties agree that this entire agreement shall be entered as a court order by the appropriate court of Mercer County, Pennsylvania, as a part of the divorce decree and that both of them will sign whatever papers are necessary in order to have the

aforementioned paragraphs reduced to the full force and effect of a court order."

The divorce decree entered by the court on November 12, 1982, states "[t]he post-nuptial agreement executed by the parties on June 16, 1982, is made a *part hereof and incorporated by reference* with the exception of paragraph 4.01 concerning custody the court order thereon may be obtained after a hearing at which time the proper parties are present before the court." (emphasis supplied)

The crux of this dispute arose as a result of the remarriage of Ann MacHarg to George W. Becker on June 14, 1989. As a result of the remarriage, defendant, David P. MacHarg Jr., stopped paying the alimony provided for in section 4.04 of the separation and property-settlement agreement. Because of this dispute several actions have been filed in order to determine the validity of the separation and property-settlement agreement and to enforce its terms and conditions.

Plaintiff has filed a complaint in assumpsit alleging breach of contract at this term and number, seeking recovery of the sums allegedly owed by defendant under the separation and property-settlement agreement. Plaintiff in this action, Ann MacHarg, filed the identical complaint in assumpsit based on a breach of contract asking for the amounts allegedly owed under the separation agreement at no. 1259 C.D. 1989.

Defendant in this action, David MacHarg, filed a declaratory-judgment action at no. 1201 C.D. 1989 against Ann MacHarg, now known as Ann M. Becker, asking for first a declaratory judgment that the remarriage of the former Mrs. MacHarg terminated the alimony owed by Mr. MacHarg under section 4.04 of the separation and property-settlement agreement. Secondly in that action he

asked for a declaratory judgment that the former Mrs. MacHarg was judicially estopped from filing an action in child support in the amount she is allegedly owed under section 4.04 of the separation and property-settlement agreement. The second count of the declaratory-judgment action stemmed from a support complaint filed by Ann MacHarg, now known as Ann Becker, at 435 D.R. 1989, asking for $833.33 per month per child for three children resulting in an alleged amount of support of $2,499.99 per month, this amount being almost identical to the $2,500 per month provided for as alimony in section 4.04 of the separation and property-settlement agreement.

Finally, the matter currently before the court for disposition is the petition for contempt filed by plaintiff, Ann MacHarg, now known as Ann M. Becker, against David P. MacHarg Jr., at 627 C.D. 1982, asking the court to find defendant in contempt for failing to pay alimony pursuant to section 4.04 of the separation and property-settlement agreement.

## DISCUSSION

The current controversy before the court is the proper method for enforcing mutually agreed upon separation and property-settlement agreements. The key determination in resolving this controversy is whether the settlement agreement was "incorporated" or "merged" into the divorce decree. If such agreements are "merged" into the divorce decree they lose their independent standing as a contract and become an order of court enforceable only under the provisions of the Divorce Code, 23 P.S. §101 et seq. *Sonder v. Sonder,* 378 Pa. Super. 474, 491, 549 A.2d 155, 164 (1988). However, if agreements are only "incorporated" into the divorce de-

cree by reference the agreement retains its identity as a contract and is enforceable according to assumpsit and equity principals of law and cannot be enforced in accordance with the provisions of the Divorce Code. *Id.* The distinction between "merger" and "incorporation" is at the heart of the present controversy.

Plaintiff argues that by the wording of the divorce decree the separation agreement has merged into the divorce decree and therefore is enforceable by the court pursuant to the provisions of the Divorce Code contained in 23 P.S. §101 et seq. Plaintiff further argues that pursuant to 23 P.S. §501(f) that the alimony payments in question are not an award of alimony as defined in that section and therefore are not modifiable by the court as a result of plaintiff's remarriage, but are enforceable pursuant to 23 P.S. §503.[1]

---

1. 23 P.S. §503 provides:

"§503. *Enforcement of arrearages* —

"If at any time a party is in arrears in the payment of alimony or alimony pendente lite as provided for in sections 501 and 502, after hearing, the court may, in order to effect payment of the arrearages:

"(1) Enter judgment.

"(2) Authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real estate of the party.

"(3) Attach no more than 50 percent of the wages of the party.

"(4) Award interest on unpaid installments.

"(5) Require security to insure future payments.

"(6) Issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that person named as having failed to comply with the court order be brought before the court at such time as the court may direct. If the court finds, after hearing, that the said person willfully failed to comply with the court order, it may deem said person

Defendant's position also seems to be that the agreement is merged into the divorce decree and as a result of merger the separation and property-settlement agreement has lost its identity as a contract and is therefore subject to the provisions of the Divorce Code, 23 P.S. §101 et seq. Specifically, defendant argues that 23 P.S. §501(e), which states that "[r]emarriage of the party receiving alimony shall terminate the award of alimony," controls the issue now before the court. Defendant claims as a result of the merger of the agreement into the divorce decree that when plaintiff remarried her right to alimony terminated pursuant to the provisions of the Divorce Code, specifically 23 P.S. §501(e).

In order to better understand the arguments of both sides it is necessary to delve into the labyrinth that the appellate courts of this commonwealth have created by using the terms "merger" and "incorporation." In *Sonder v. Sonder,* 378 Pa. Super. at 493, 549 A.2d at 165, the court held that, "[a]ny agreement which speaks of incorporation but rejects merger was intended by the parties not to be brought under the provisions · of sections 401, 501(e) and (f), and 503 for the enforcement of separation agreements." The court continued by stating, "[o]nly by an order which does not reject merger, or requires court enforcement of the agreement, does it become part of the decree and have the effect of an order. By renouncing merger and failing to have language in the decree requiring enforcement as a court order, the contract

in civil contempt of court and in its discretion make an appropriate order including, but not limited to, commitment of said person to the county jail for a period not to exceed six months.

"(7) Award counsel fees and costs."

survives." *Id.* What the court in essence is stating is that even if the parties use the word "incorporation" but do not specifically reject merger in the property-settlement agreement, then the agreement is merged and loses its identity as a contract thereby becoming a part of the court order subject to the provisions of the Divorce Code, specifically those contained at sections 501 and 503.

The Superior Court's most recent pronouncement on this perplexing issue is contained in *D'Huy v. D'Huy*, 390 Pa. Super. 509, 568 A.2d 1289 (1990), where the court stated, "[W]e hold that where, as here, the parties to a property-settlement agreement have clearly and unambiguously expressed in their agreement an intent that their agreement will survive the entry of the divorce decree, the agreement survives the divorce decree and is not merged therein even where the decree incorporates the terms of the agreement. The property settlement remains an enforceable contract, not subject to the unilateral modification as a court order." In footnote 3 of the *D'Huy* opinion the court specifically stated, "[T]o the extent that there is language in *Sonder* suggesting that the decree must expressly reject merger, such language is disapproved." In *D'Huy*, the provisions of the settlement agreement regarding the enforcement provided specifically, "[I]n the event that the marriage of the parties hereto is terminated by divorce, this agreement shall nevertheless remain in full force and effect and shall survive the decree." *D'Huy, supra.* Furthermore, the divorce decree in *D'Huy* stated; "incorporated herein and made a part of this divorce decree is the attached property-settlement agreement dated August 24, 1983, by and between Polly Ann D'Huy and Gerard D'Huy." *Id.*

As previously stated, the current rule, as set forth by the Superior Court, in determining whether the property-settlement agreement is incorporated or merged into the divorce decree is to look to the language of the property-settlement agreement to determine the actual intent of the parties to determine whether they wished the property-settlement agreement to be incorporated and remain in full force and effect as a contract or to be merged and lose its identity as a contract and subject it to enforcement pursuant to the provisions of the Divorce Code.

In order for us to determine whether we can find defendant in contempt for failing to pay pursuant to the provisions of the separation and property-settlement agreement entered into by and between the parties it is necessary for us first to determine whether or not the provisions of the property-settlement agreement were "merged" or "incorporated" into the divorce decree. To make use of the Divorce Code's enforcement provision of contempt we must find that the settlement agreement "merged" into the divorce decree. Despite the belief by both parties that merger did occur in the present case, we believe that it is clear from the language of *D'Huy* that the separation and property-settlement agreement in the present case did not "merge" into the divorce decree.

Initially, section 2.03 of the separation and property-settlement agreement between the parties hereto specifically stated "[t]his agreement shall forever survive any action for divorce and decree of divorce and shall forever be binding and conclusive on the parties, and independent legal action may be brought to enforce the terms of this agreement. . ." In addition, in section 4.04 of the separation and property-settlement agreement it is clear that the

parties intended and anticipated that plaintiff could possibly remarry and not have her alimony discontinued when they stated in the provisions for increase of alimony that the trier of fact should consider "her marital status and the income of her future husband." Even though section 6.01 of the agreement states that "the parties agree that this entire agreement will be entered as an order of court . . . as part of the divorce decree," it is clear that the intent of the parties was only to incorporate the agreement into the court order and not to have it merged. In addition, the divorce decree itself specifically stated that the agreement executed by the parties is "made a part hereof and incorporated by reference."

We believe that if we were to apply a literal reading of the language of *Sonder*, which required that any agreement which speaks of incorporation but does not expressly reject merger is thereby merged, it would result in a grave injustice to Mrs. Becker by rejecting the clear intentions of the parties in the agreement and would result in this court engaging in semantic gymnastics which it will not do. The court in *D'Huy* specifically recognized such a mechanical result is not proper when it stated in footnote 3 that "to the extent that there is language in *Sonder* suggesting that the decree must expressly reject merger, such language is disapproved." *D'Huy, supra.* Therefore, we find that the separation and property-settlement agreement in the present case was not merged into the divorce decree but was only incorporated by reference and it was the intent of the parties for it to "forever survive any action for divorce and decree of divorce and shall forever be binding and conclusive on the parties."

As a result of the agreement only being incorporated into the divorce decree and not being merged this court does not have the power to grant plaintiff's petition for contempt since the property-settlement agreement is not enforceable under the provisions of the Divorce Code, specifically 23 P.S. §503.[2] The appropriate action which plaintiff

---

2. This court has considered, at length, in researching for this opinion the effect of the February 12, 1988 amendments to the Divorce Code, specifically section 401.1. Section 401.1 states in pertinent part:

"(a) A party to an agreement regarding matters within the jurisdiction of the court under this act, *whether or not the agreement has been merged or incorporated into the decree,* may utilize a remedy or sanctions set forth in this act to enforce the agreement to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement. . .

"(c) In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court." (emphasis supplied)

We believe that if 23 P.S. §401.1 were found to be retroactive that it would specifically answer the question currently before the court. However, the appellate courts of this commonwealth despite having several opportunities have not as yet addressed the issue of the retroactivity of section 401.1. In *D'Huy, supra,* the court in footnote 2 stated, "We do not reach the question of whether the amendments to the Divorce Code concerning merger/incorporation effective February 12, 1988, shall be retroactively applied to this case." In addition, in *Bell v. Bell,* 390 Pa. Super. 526, 568 A.2d 1297 (1990), the court also declined to address the question of whether the amendments to the Divorce Code should be retroactively applied. In dissenting opinions in *D'Huy* and *Bell* several judges suggested that the intent of the legislature was to have the February 12, 1988 amendments apply retroactively and relieve the consternation within the family practice bar over the semantic battle between "merger" and "incorporation."

should pursue in order to vindicate her rights would be to pursue the assumpsit action filed as a result of a breach of contract.

## ORDER

And now, April 30, 1990, after hearing and argument and the court finding that plaintiff's petition for contempt is the inappropriate vehicle for enforcing the provisions of the separation and property-settlement agreement entered into by and between the parties, it is the order of this court that plaintiff's petition for contempt is hereby denied.

---

This court in *Bires v. Stefanak,* 4 D.&C. 4th 545 (1989), Acker, *P.J.,* found that the February 12, 1988 amendments to the Divorce Code, specifically section 401.1, were not to be retroactively applied and could not be used as a basis for requesting contempt as a result of failure to pay pursuant to a mutually entered into property-settlement agreement. We believe however, that the present case can be decided and justice done without the use of section 401.1. This court would be hard pressed to find defendant in contempt even if section 401.1 were to be retroactively applied since the reason for the failure to pay is based on a reasonable and legitimate dispute as to the effect of the law and the effect it has on the property-settlement agreement.