T.C. Summary Opinion 2006-130

UNITED STATES TAX COURT

PAMELA L. LIGHT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22909-04S.              Filed August 28, 2006.

Pamela L. Light, pro se.

<u>Jack T. Anagnostis</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $1,599 in petitioner's 2002 Federal income tax. The sole issue for this Court to decide is whether petitioner must include in her gross income alimony payments she received in 2002.

## Background

Some of the facts have been stipulated and are so found. At the time the petition in this case was filed, petitioner resided in Bethel, Pennsylvania.

Petitioner and Kent R. Gutzler (Mr. Gutzler) were married on September 12, 1998. There were no children born of the marriage. After petitioner and Mr. Gutzler separated, a final order (order) was issued by the Court of Common Pleas of Berks County, Pennsylvania, Domestic Relations Section on January 22, 2002, which directed that Mr. Gutzler pay $1,400 monthly for petitioner's support, effective January 1, 2002. These monthly payments were to end in the event of either party's death. The order included a handwritten notation that read: "Plaintiff agrees to be responsible for the monthly payment of the Jeep vehicle in her possession and the insurance thereon."

The parties entered into a postnuptial agreement (agreement) on October 11, 2002. Under the agreement, Mr. Gutzler was ordered to pay petitioner alimony of $1,400 a month. These monthly payments were to end in the event of either party's death. The agreement also provided for the tax treatment of the

payments. The payments were to be alimony, included in petitioner's gross income and deductible by Mr. Gutzler from his gross income. Moreover, in the event that petitioner challenged Mr. Gutzler's rights to deduct any portion of the monthly payments from his income, she would remain liable to him for the full amount of any increase in his Federal income tax liability. Finally, both parties specifically acknowledged that certain tax consequences might result from the agreement, and that they had been advised to seek independent tax advice regarding these possible tax consequences.

On or about April 15, 2003, petitioner filed Form 1040, U.S. Individual Income Tax Return, for 2002, on which she reported both adjusted gross and taxable income of $2,392. On August 16, 2004, respondent issued a notice of deficiency. Respondent's examination increased petitioner's reported gross income by $16,800 representing the alimony payments petitioner received from Mr. Gutzler in 2002. Additionally, respondent disallowed petitioner's previously claimed earned income tax credit of $178. As a result of these changes, respondent calculated a deficiency of $1,599 for petitioner's 2002 Federal income tax.

## Discussion

The Commissioner's determinations are presumed correct, and taxpayers generally bear the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 115 (1933). Accordingly, petitioner

bears the burden of proving that respondent's determination in the notice of deficiency is erroneous.  See Rule 142(a); <u>Welch v. Helvering</u>, <u>supra</u> at 115.

<u>Taxation of Alimony</u>

An individual <u>may</u> deduct from his or her taxable income the payments he or she made during a taxable year for alimony or separate maintenance.  Sec. 215(a).  Conversely, the recipient of alimony or separate maintenance payments <u>must</u> include those payments when calculating his or her gross income.  Sec. 61(a)(8).

Section 71(b)(1) defines "alimony or separate maintenance payment" as any payment in cash if:

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includable in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Section 71(b)(2) defines a "divorce or separation instrument" as:

> (A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,
>
> (B) a written separation agreement, or
>
> (C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

Characterization of Monthly Payments

Petitioner argued that none of the $1,400 monthly payments she received in 2002 should be included in her gross income under section 71(a) because she and Mr. Gutzler had a "handshake understanding" that the payments were not alimony. Petitioner testified to an oral agreement between Mr. Gutzler and her that purportedly took place concurrent with the order. It provided that Mr. Gutzler would not deduct the payments, nor would petitioner include the payments as income, if she used the payments solely for her attorney's fees, payment of Mr. Gutzler's automobile insurance, and payments on an automobile in Mr. Gutzler's possession. Petitioner now asks this Court to reject the underlying order and agreement and, in the alternative, consider evidence: (1) Of a "handshake" agreement, and (2) that the terms of the "handshake" agreement should supplant the meaning of alimony pendente lite and alimony as used in the order and the agreement. Since petitioner disputes the legal effects

of the order and the agreement as written, we must first examine the terms and tenor of those contracts.

1. Order

Among the relevant provisions of the order, paragraph 3 of the "Legal Notice" (p. 4) states:

All charging orders for spousal support and alimony pendente lite, including unallocated orders for child and spousal support or child support and alimony pendente lite, shall terminate upon death of the payee.

2. Agreement

Among the relevant provisions of the agreement, paragraph 10 ("Waiver Or Modification To Be In Writing") states:

No modification or waiver of any of the terms hereof shall be valid unless in writing and signed by both parties and no waiver or any breach hereof or default hereunder shall be deemed a waiver of any subsequent default of the same similar nature.

Moreover, paragraph 13 ("Integration") reads:

This agreement constitutes the entire understanding of the parties and supercedes any and all prior agreements and negotiations between them. There are no representations or warranties other than those expressly set forth herein.

Section B ("Support, Alimony, and Alimony Pendente Lite Provisions") states:

Husband shall pay alimony pendente lite to Wife in the sum of One Thousand Four Hundred Dollars ($1,400) per month until entry of the decree in divorce between the parties or for a period of four (4) months after the execution date of this agreement. Such payments shall terminate in the event of Husband's death of Wife's prior death. The alimony pendente lite order for support shall remain in full force and effect until the divorce decree is entered.

Lastly, section G ("Tax Provisions"), paragraph 2 ("Payments To Be Alimony") reads:

> It is the intention of the parties that all payments made to Wife by Husband pursuant to the provisions of Paragraph B 2 hereof while the parties are living apart are intended to be alimony payments, taxable as income to Wife and deductible from income by Husband for income tax purposes, and that no other payments made under this agreement are to be deemed or treated as alimony.  In the event of any action taken by Wife which affects Husband's rights to deduct any portion or all of the alimony payments from Husband's income, Wife will be liable to Husband for the full amount of the increase in Husband's tax liability resulting from the loss of the deduction.  * * *  All alimony payments shall terminate as set forth in Paragraph C 2 or upon the prior death of Wife.

We are satisfied that payments made pursuant to both the order and the agreement meet the requirements of section 71(b)(1) and (2).  The order is a decree requiring payments for maintenance or support within the purview of section 71(b)(2)(C), and it does not contain any provision that the payments not be includable in the payee's gross income.  Furthermore, the order specifically provides that payments are to cease upon the death of the payee spouse.

The agreement, entered incident to the decree of divorce, also specifies that the payments are to cease on the payee spouse's death.  The agreement provides that the monthly payments are to be included in the gross income of the payee spouse.  Notably, the agreement specifically supersedes any prior agreements between the parties, constitutes the full

understanding of the parties, and provides that the payments are includable in the gross income of the payee spouse. Therefore, we find both the order and the agreement clear and unambiguous that the payments made pursuant to both are to be alimony as defined under section 71(b).

3. Evidence of Oral Contract

Petitioner argued that despite plain language in the order and agreement to the contrary, this Court should consider evidence of an oral contract, made concurrently with the order, that the payments were not to be considered alimony includable in her gross income, nor would Mr. Gutzler claim a deduction on the payments, in exchange for certain obligations otherwise assumed by petitioner, as well as in consideration for her abandoning their marital home. Petitioner claimed that these obligations included her assumption of Mr. Gutzler's automobile insurance payments, payments on an automobile in Mr. Gutzler's possession, and payment of her attorney's fees. Our determination that the order and the agreement are clear, enforceable contracts obligating Mr. Gutzler to make payments to petitioner notwithstanding, we next address petitioner's argument that we should consider extrinsic evidence of a side agreement as to the parties' intentions regarding the monthly payments.

Agreements incident to a divorce are contracts that must be construed in accordance with the rules of law generally

applicable to contract construction. D'Huy v. D'Huy, 568 A.2d 1289, 1293 (Pa. Super Ct. 1990) (citing Trumpp v. Trumpp, 505 A.2d 601 (Pa. Super Ct. 1985)). These rules require that contractual terms that are otherwise clear and unambiguous be given effect without reference to or reliance upon matters that may have occurred outside of the contract. Id. Equally true, of course, is that where the terms of a contract are ambiguous, parol (i.e., oral) evidence may be received for the limited purpose of resolving these ambiguities. Id. (citing In re Estate of Breyer, 379 A.2d 1305, 1309-1310 (Pa. 1977)). Accordingly, the question remaining is not petitioner's intent as to the purported oral agreement but rather whether the terms "alimony pendente lite" and "alimony" as used in the order and the agreement are ambiguous.

The terms of the order and the agreement are otherwise clear and unambiguous. In the order, the parties expressly agreed that Mr. Gutzler would pay petitioner monthly alimony pendente lite of $1,400 based upon the disparity in their respective incomes. Petitioner may not argue that these payments are excludable from her gross income simply because she earmarked them for other obligations; namely, her own attorney's fees and payment on a vehicle which, at trial, she testified had been in her possession since February 2002. The notation on the order that petitioner was to remain responsible for payments on the Jeep vehicle in her

possession as of February 2002 does not imply that the monthly payments were expressly and only for this purpose. Additionally, there was no evidence presented of petitioner's obligation to pay Mr. Gutzler's automobile insurance out of the monthly payments.

Petitioner also maintained an erroneous belief that because she was using part of the payments to satisfy her attorney's fees in the underlying divorce action, these payments would not be includable in her gross income. As previously discussed, section 71(b) provides that if a spouse receives alimony pendente lite, the amount received must be included in the gross income of the payee. Secs. 71(b)(1), (2)(C). Moreover, because petitioner had unfettered discretion and control over the payments, she may not exclude from her gross income amounts which she alone designated for her own attorney's fees.

Finally, while we are sympathetic to petitioner's argument that she would not have signed the order were it not for her understanding that she would not have to include payments received in her gross income, her misunderstanding is an error of law. See secs. 61(a)(8), 71(b)(1). Accordingly, because we find the underlying order and agreement clear, controlling, and the exclusive statement of all of the terms of the parties' settlement, we sustain respondent's deficiency determination.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for the respondent.