583 A.2d 474

Giacomo Filippo BALLESTRINO

v.

Enrica BALLESTRINO, Appellant.

Superior Court of Pennsylvania.

Submitted May 2, 1990.

Filed Dec. 6, 1990.

238

Frank Carano, Philadelphia, for appellant.

Angela L. Martinez, Bala Cynwyd, for appellee.

Before DEL SOLE, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant (Wife) appeals from the April 22, 1988 order entered by the Honorable Evelyn M. Trommer, which determined that a prior support order that had been incorporated in the parties' 1986 divorce decree was modifiable. Wife also appeals from the June 20, 1989 order entered by the Honorable Jerome A. Zaleski, which granted in part the petition of appellee (Husband) to remit and reduce alimony. The effect of the latter order was to reduce Husband's monthly obligation from $432 to $357. Wife contends that the court below erred in determining that the support order was modifiable. For the reasons set forth below, we quash the appeal from the order entered April 22, 1988, and we affirm the order entered June 20, 1989.

On April 9, 1986, Judge Trommer entered a decree and order divorcing the parties. The decree also incorporated by reference the terms of a stipulation entered into by the

parties on October 15, 1985. The decree and order provides, in its entirety, as follows:

AND NOW, this 9th day of April, 1986, the Master's Report in the above case having been duly approved, the Court by virtue of the authority vested in it by law, DECREES that GIACOMO FILIPPO BALLESTRINO AND ENRICA BALLESTRINO are hereby divorced from the bonds of Matrimony, and the said parties shall be at liberty to marry again.

AND IT IS FURTHER ADJUDGED AND DECREED, that the terms, provisions and conditions of a certain property settlement Stipulation between the parties dated October 15, 1985, and attached hereto, are hereby incorporated in this Decree and Order by reference as fully as though the same were set forth herein at length. Said agreement shall not merge with, but shall survive this Decree and Order.

IT IS FURTHER ORDERED AND DECREED that the alimony and support provisions of the agreement attached to this Decree and Order shall be incorporated into an order of the Domestic Relations Branch of the Court of Common Pleas of Philadelphia County, No. ___, and all payment thereunder shall be made through the Domestic Relations Branch of the Court of Common Pleas of Philadelphia County.

The October 15, 1985 stipulation incorporated in the decree provides in pertinent part:

Now, therefore, it is mutually stipulated and agreed as follows:

1. The Preliminary Objection of Defendant to the Complaint in Divorce Raising Questions of Jurisdiction be and are [sic] hereby withdrawn.

2. It is agreed that the Report of the Master SAMUEL C. STRETTON recommending that the Plaintiff be divorced from the Defendant on the ground of Indignities to the Person be approved by the Court conditioned upon the Plaintiff making the following payments to the persons and for the purposes designated;

(a) Plaintiff shall pay Defendant the sum of $4,000 in full settlement of arrearages for support of Defendant and her son, FABIO BALLESTRINO; $2,000 thereof to be paid upon execution of this stipulation and $2,000 thereof within 60 days after approval of the Master's Report.

(b) Plaintiff shall pay Frank Carano, Esq. within 30 days after approval of the Master's Report the sum of $2,000 for counsel fees due and owing by defendant to Frank Carano, Esq., and co-counsel.

(c) Plaintiff agrees to pay Defendant the sum of $432 per month from approval of the Master's report for and during her natural life and so long as she remain unmarried.

In June, 1987, Wife instituted a contempt action against Husband for his failure to comply with the decree. As a result, the court ordered Husband to pay an additional $200 per month toward arrearages. To enforce this order, the court directed that Husband's wages be attached.

On January 27, 1988, Husband filed a Petition to Remit and Reduce Alimony. He alleged that changes in his financial circumstances had occurred since the time the stipulation had been entered into. Specifically, Husband alleged that he had been permanently discharged from his employment which had paid $45,000.00 per year, and had secured other employment at substantially less pay. In addition, he had remarried and had a daughter who was two years old at the time of the filing of the petition. Following a hearing and briefing by the parties, Judge Trommer entered an order on April 22, 1988, finding that the support provisions of the decree were modifiable, and directing Wife to submit evidence of her income and expenses.

Thereafter, Judge Trommer became ill, and the matter was listed before Judge Zaleski. On June 20, 1989, Judge Zaleski entered an order confirming Judge Trommer's order and reducing Husband's alimony payments to $357.00 per month. The reduction was based on the decrease in Hus-

band's income. Wife then filed the instant appeal from both the April 22, 1988 order and the June 20, 1989 order.

As a preliminary matter, we note that the appeal from the April 22, 1988 order is improper. Wife's notice of appeal was filed on July 19, 1989, almost fifteen months after entry of the order. Thus, the appeal is untimely. *See* Pa.R.A.P. 902, 903. In addition, the appeal is improper because the April 22, 1988 order was a non-final order that did not end the litigation between the parties. *See Praisner v. Stocker,* 313 Pa.Super. 332, 459 A.2d 1255 (1983) (en banc). Accordingly, we quash the appeal from the April 22, 1988 order. Our quashal of this appeal in no way affects Wife's substantive rights, however, as her sole claim, properly presented in her appeal from the June 20 order, concerns the propriety of the conclusion that the original support order was modifiable.

The single issue presented on appeal is whether the court below erred in determining that the support provision contained in the parties' stipulation, and incorporated in the divorce decree, was modifiable.[1] It is settled that, if a property settlement agreement containing support provisions survives as an enforceable contract, it is *governed* by the law of contracts. *See D'Huy v. D'Huy,* 390 Pa.Super. 509, 518, 568 A.2d 1289, 1293 (1990) (en banc); *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988) (en banc); *McGough v. McGough,* 361 Pa.Super. 391, 522 A.2d 638 (1987), *allocatur denied,* 515 Pa. 623, 531 A.2d 431 (1987); *see also Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981). Thus, in such an instance, "the enforcement remedies are not those pursuant to the support laws, therefore, attachment of the person and wage attachment are not permissible." *Dechter v. Kaskey,* 379 Pa.Super. 45, 49, 549

---

**1.** Neither party has raised a question concerning the possible retroactive effect of the 1988 amendments to the Divorce Code concerning merger and incorporation. *See* 23 Pa.Stat.Ann. § 401.1. Thus, we cannot consider this question. *See D'Huy v. D'Huy,* 390 Pa.Super. 509, 515 n. 2, 568 A.2d 1289, 1292 n. 2 (1990); *see also Bell v. Bell,* 390 Pa.Super. 526, 530 n. 1, 568 A.2d 1297, 1299 n. 1 (1990) (en banc) (plurality opinion by BECK, J.) (same).

A.2d 588, 590 (1988) (en banc) (construing *Sonder v. Sonder, supra*). If a property settlement agreement is merged into a divorce decree or court order, however, the agreement "take[s] on all of the attributes of support Orders for purposes of modification and enforcement." *Sonder v. Sonder, supra*, 378 Pa.Super. at 512, 549 A.2d at 175. Such an agreement, therefore, "is no longer enforceable as a contract but is subject to the full range of modification and change permitted to court Orders under section 501(e) [of the Divorce Code, 23 Pa.Stat.Ann.]. It is also subject to enforcement provisions provided by section 503, Enforcement of arrearages." *Id.*, 378 Pa.Superior Ct. at 491–92, 549 A.2d at 164 (footnote omitted).

 The question whether a settlement agreement should survive the divorce decree or be considered merged into the decree and subject to modification as a court order depends upon the intention of the parties. *See Lipschutz v. Lipschutz*, 391 Pa.Super. 537, 541–43, 571 A.2d 1046, 1049 (1990); *D'Huy v. D'Huy, supra; see also Bell v. Bell*, 390 Pa.Super. 526, 568 A.2d 1297 (1990) (en banc) (plurality opinion); *Sonder v. Sonder, supra.* And, of course, the intention of the parties generally is determined by examining the terms of the agreement itself. *See, e.g., Lipschutz v. Lipschutz, supra; McGough v. McGough, supra.*

Appellant argues that this case is controlled by *McGough v. McGough, supra.* In *McGough*, the parties entered into a property settlement agreement that provided for support, and the subsequent decree in divorce incorporated the settlement and provided further that the agreement "shall not merge with but shall survive this Decree and Order." 361 Pa.Super. at 393, 522 A.2d at 639. The *McGough* panel rejected the Husband's claim that this agreement was modifiable, reasoning as follows:

The terms of the property settlement agreement demonstrates a clear intent on the part of both parties to enter into a binding contract. The document contains the statement "Husband and Wife now desire to settle and determine for all time their mutual property rights".

Immediately prior to the covenants providing for marital property division and support obligations, there is a statement of the parties' intent to be legally bound.... [T]he agreement was a detailed contract covering all aspects of the economic relationships of the parties and the amount of support provided was not unfair or inadequate. Both spouses were represented by counsel and the agreement reached cannot be termed one-sided.

From the foregoing it is evident that both appellant and appellee fully intended to enter into an enforceable contract in accordance with the terms of the property settlement agreement.... Nothing suggests that this agreement was entered into with an understanding that it would later merge into a divorce decree and thereby be rendered modifiable by the courts. To the contrary, the agreement suggests that appellee relinquished valuable property rights and potential claims for counsel fees and costs in exchange for and in reliance upon certain promises made by her husband—including his promise to pay a fixed amount of child support per month.

We note further that the divorce decree, despite the arguable inconsistency, was quite explicit in stating that there would be no merger and that the property settlement agreement would survive as an enforceable contract.

*Id.*, 361 Pa.Superior Ct. at 394–95, 522 A.2d at 640.

In the case at bar, the stipulation stated that it was the "desire of [Wife] to withdraw [her] Preliminary Objections, and to resolve other disputes between the parties." The parties then stipulated that Wife's jurisdictional objections would be withdrawn, and a divorce on the ground of indignities (grounds that Husband sought) should be approved by the court. In return, Husband agreed to pay Wife $4,000 in arrearages for support of Wife and her son, $2,000 for Wife's attorneys' fees, and monthly support of $432 "for and during her natural life and so long as she remain unmarried." The stipulation was signed by both parties and their counsel.

At first blush, Wife's claim that *McGough* governs this case appears to be persuasive. The case is similar to *McGough* in that the stipulation is not one-sided, as Wife withdrew her objections concerning jurisdiction and the basis for the divorce (indignities), in return for economic concessions made by Husband. Moreover, it is undisputed that both spouses were adequately counselled, and that the amount of support is adequate. In addition, the stipulation purports to resolve economic issues involving support, counsel fees, and arrearages. And, finally, as in *McGough*, the stipulation is silent with regard to whether it was intended to survive the decree in divorce or to merge into it, and the only reference to merger is contained in the divorce decree itself, which states that the stipulation "shall not merge with, but shall survive this Decree and Order."

Despite these similarities, Wife's assertion that the facts in *McGough* are "on all fours" with this case is overstated. Here, unlike *McGough*, the stipulation does not purport to be a "detailed contract covering all aspects" of the parties' economic relationship. Moreover, there is no joint statement of the parties' desire to determine "for all time" their property rights, and there is no separate statement of the intention to be legally bound. Finally, although the stipulation does not state that it would later merge into a divorce decree, it clearly was entered into in contemplation of the divorce decree, as the parties conditioned their obligations on the court's approval. *See* para. 2, 2(a)–2(c). Thus, the stipulation here contains a far less clear indication of the parties' intent with regard to merger and modification than did the agreement in *McGough*.

If Wife were correct that all that is present in this case is the parties' silence concerning merger and the decree's exclusion of merger, there would be little question that *McGough* would require a holding that the support provision is not modifiable except "in accordance with the law regulating contracts through proceedings of law or in equity." *See Sonder v. Sonder, supra,* 378 Pa.Super. at 513, 549 A.2d at 175; *McGough v. McGough, supra,* 361 Pa.Su-

per. at 393, 522 A.2d at 639–40. However, Husband argues, and we agree, that the court's finding of modifiability clearly is proper when it is considered in light of Wife's actions since entry of the decree, and the parties' silence regarding merger.

Husband notes that in 1987 Wife instituted a contempt action against him based on his failure to pay support. As a result, the trial court ordered Husband to pay an additional $200 per month to pay off arrearages. In so doing, the court ordered that Husband's wages be attached. As we have already noted, such relief is proper only if the support provision merged into the court order, and was not an independently enforceable contract. *See Sonder v. Sonder, supra; see also Dechter v. Kaskey, supra.* In light of these facts, Husband argues that:

> having previously used the enforcement and contempt powers of the court and received the advantages thereby, the appellant/wife can not now claim that the said Stipulation is a contract, enforceable only as such.... The same authority by which Judge Trommer granted her requested relief in 1987 is the same authority by which Judge Trommer found the agreement to be modifiable and by which Judge Zaleski did in fact modify the Order.

Appellee's Brief at 9.

Husband's point is well-taken. Where the parties have been silent on the question of modifiability, and the court already has employed the vast powers of contempt and attachment to enforce a support order in favor of the other party, we cannot conclude that the court erred in determining that the order was modifiable.

■ We find further support for this conclusion by reference to principles of estoppel. As the panel in *Lipschutz v. Lipschutz, supra,* noted: "[j]udicial estoppel provides that a party to an action will be estopped from asserting a position inconsistent with his/her assertion or claim in a previous action, particularly if his/her contentions were successfully maintained." 391 Pa.Super. at 547, 571 A.2d at

1052 (citing *Associated Hosp. Serv. of Philadelphia v. Pustilnik,* 497 Pa. 221, 439 A.2d 1149 (1981)). Here, although Wife did not "successfully maintain" in her contempt action that the support provision was *modifiable,* she nevertheless was successful in having the provision *enforced* under the Divorce Code, and she did not seek relief under contract and equity principles. In such a situation, it is not improper for the court to refuse to entertain a later claim that the support provision is governed only by contract law.[2]

For the foregoing reasons, we find that the court below did not err in determining that the support provision incorporated into its divorce decree was modifiable. Accordingly, we affirm the order entered June 20, 1989.

Appeal from the order of April 22, 1988 quashed. Order of June 20, 1989 affirmed.

JOHNSON, J. files a dissenting opinion.

JOHNSON, Judge, dissenting:

I join my esteemed colleagues in concluding that the appeal taken on July 19, 1989 from a trial court order entered on April 22, 1988 must be quashed for the reasons set forth in the majority opinion. I also agree that we are presented with a single issue for review: May an agreement of support contained in a property settlement agreement be modified when such agreement is incorporated in a decree of divorce which provides that "said Agreement shall not merge with, but shall survive this Decree and Order"?

For me, the answer is found in § 401.1 of the Divorce Code, 23 P.S. § 401.1 (as amended by the Act of February

---

**2.** We are aware that the 1988 amendment to the Divorce Code allows a party to utilize the *enforcement* provisions of the Code even if the parties' agreement was not *merged* into the divorce decree. *See* 23 Pa.Stat.Ann. § 401.1(a). Under this amendment, therefore, a party's action in seeking enforcement under the Code could have no bearing on the question whether the parties intended that their settlement agreement should survive the divorce decree. Here, however, Wife's contempt action was instituted, and she obtained relief, prior to this amendment.

12, 1988, P.L. 66, No. 13, § 2) (Act No. 13). Under that amendment to the Code, a court may enforce all divorce agreements but may not modify them unless the agreement specifically provides for modification. In the case before us, there is no provision set forth in the agreement for modification. Modification is prohibited under the Code. I, therefore, would reverse the order which sought to reduce the alimony payments of Giacomo Filippo Ballestrino (Husband). Accordingly, I must dissent.

On February 12, 1988, the state legislature enacted 23 P.S. § 401.1 which provides:

(a) A party to an agreement regarding matters within the jurisdiction of the court under this act, *whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this act to enforce the agreement* to the same extent as though the agreement had been an order of the court except as provided to the contrary in the agreement.

(b) A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances.

(c) *In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court.*

23 P.S. § 401.1 1980, April 2, P.L. 63, No. 26 § 401.1, added 1988, Feb. 12, P.L. No. 13, § 2, imd. effective. (emphasis supplied).

In a footnote, the majority opinion intimates that we cannot properly consider the applicability of the statute to the question presented on this appeal because of the statute's "possible retroactive effect." Majority opinion, page 242, n. 1. The majority does not explain what is meant by that phrase nor how the term has any applicability to § 401.1. While the opinion invites us to review earlier statements on the matter, I do not find those earlier foot-

notes any more helpful. *Cf., D'Huy v. D'Huy*, 390 Pa.Super. 509, 515 n. 2, 568 A.2d 1289, 1292 n. 2 (1990) (refusal by the en banc court majority to reach applicability of Act No. 13, in spite of special scheduling and briefing for just that purpose); *Bell v. Bell*, 390 Pa.Super. 526, 530 n. 1, 568 A.2d 1297, 1299 n. 1 (1990) (plurality opinion, same refusal).

Most recently, a panel of our court has continued the apparent technique of "rejection by footnote" with regard to the viability and applicability of Act No. 13. *Nessa v. Nessa*, 399 Pa.Super. 59, 581 A.2d 674 (1990). Without setting forth the language from the Act which is claimed to be inapplicable, the panel declared, in passing:

.... The agreement contained a specific provision for incorporation and not merger, therefore, it survived as a contract and was not modifiable by the court.[2]

---

[2] We also hold that this agreement is not affected by the amendment to the Divorce Code, § 401.1(c),.... as the agreement predated the amendment....

*Nessa v. Nessa, supra*, 581 A.2d at 676, including n. 2.

Does the utilization or application of § 401.1 of the Divorce Code implicate issues of retroactivity? I submit that it does not. The comprehensive 1988 amendments to the Divorce Code were intended to be remedial in nature. It was thought that new § 401.1 would clarify and simplify future proceedings which dealt with the line of cases beginning with *Brown v. Hall*, 495 Pa. 635, 435 A.2d 859 (1981); *Millstein v. Millstein*, 311 Pa.Super. 495, 457 A.2d 1291 (1983); and *Commonwealth ex rel. Tokach v. Tokach*, 326 Pa.Super. 359, 474 A.2d 41 (1984). As the author of the *Tokach* opinion, I am acutely aware of the confusion arising in the domestic relations bar following its filing. And it is reasonable to accept that the two-year reform effort culminating in Act No. 13 was intended, in material part, to remove the uncertainty remaining in this area of our family law. For reasons that remain totally unclear to me, our court has been adamant in insisting that the only way to ameliorate the uncertainty is to publish more opinions which, in my humble judgment, have preserved and rigidi-

fied the uncertainty rather than lessened it. *See, e.g., Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988) (en banc, four separate opinions); *Bell v. Bell,* supra (plurality opinion, one concurring statement, three dissenting opinions).

What does § 401.1 purport to do? Subsection (a) does nothing more than to make the enforcement provisions of 23 P.S. § 401(k) and other remedies and sanctions under the Divorce Code available to any party to an agreement, so long as the agreement deals with "matters within the jurisdiction of the court under this act." This relief is available "whether or not the agreement has been merged or incorporated into the decree" and "to the same extent as though the agreement had been an order of the court." In my reading, and re-reading, of this subsection, I find nothing to even suggest that retroactivity is an issue where a petitioner comes into court seeking relief *in praesenti.*

Similarly, subsection (c) of § 401.1 very simply declares that contracts will no longer be modified by the courts "in the absence of a specific provision to the contrary appearing in the agreement. This subsection, together with subsections (a) and (b), all relate to the power of the common pleas court to provide, or withhold, relief at the present time, at the time the matter is before the hearing judge. There is absolutely nothing in § 401.1 which would empower a trial judge to amend, change or delete any provisions appearing in a written agreement. The drafters of a bill which operates to dictate future judicial conduct will be bemused, I feel certain, upon being told once again, through this decision, that the "retroactive provisions" of the Act preclude its implementation.

It seems almost disingenuous for our court to first declare, without any explanation, that a legislative enactment has "retroactive effect" and then to refuse to consider the applicability of the statute on the basis that "neither party has raised a question concerning the *possible* retroactive effect" arising therefrom.

And I fail to discern the distinction, apparently drawn by my colleagues in the majority on this appeal, between the "enforcement provisions" found in § 401.1(a), which are relegated to footnote 2 in the majority opinion, at page 247, but are found to be viable, and "the 1988 amendments ... concerning merger and incorporation" referred to in footnote 1 of the opinion, at page 242, which are beyond our review because of "retroactivity." As far as I can perceive, the only reference to "merger and incorporation" to be found in § 401.1 is found in subsection (a) which the majority opinion concludes is operative.

My research has not disclosed any case which determines, in a straightforward manner, the effect of § 401.1 on agreements executed by the parties before the effective date of that provision. However, I conclude that the legislature clearly intended that § 401.1 govern the court's authority over divorce agreements, including those executed before the provision was enacted. I further conclude that § 401.1 was narrowly drawn not to impair any substantive rights of the parties. Accordingly, I firmly believe that, even though neither party raised the applicability of § 401.1, that section governs the authority of the court in this legal area. Thus, it must be applied to the agreement under which Husband is obligated to pay Wife $432.00 per month.

Here, the divorce agreement between the parties contains no modification provision, and thus, § 401.1 by its terms precludes modification. However, at the time the agreement was executed, court-ordered modification may have been permissible under the then-existing law. Therefore, a concern arises among some of my colleagues regarding retroactivity of § 401.1, as it impacts upon modification of this agreement.

Although I firmly believe claims of retroactivity are, as suggested above, disingenuous, I am prepared to examine the issue which my colleagues have been reluctant to address.

Retroactivity has two components: first, one must be concerned with whether the legislature intended that

§ 401.1 affect an agreement existing prior to its enactment and second, one must be concerned that the provision does not impair any substantive rights of the parties. Although the effect that § 401.1 has on prior divorce agreements may be discussed in terms of whether the statute is in fact retroactive, I would separate this analysis, treating retroactivity only in terms of whether § 401.1 was intended to apply to past agreements and treating the statutes effect in terms of its constitutionality.

The analysis begins with a determination of whether the legislature intended that § 401.1 be applied retroactively, as against agreements executed before the statute. The general rule is that statutes will be considered only prospective in their application, unless the legislature clearly manifests a contrary intent. *Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A.2d 987 (1983). Although § 401.1 does not use the term retroactive, the statutory language nevertheless might be found to suggest an express intent that the statute be applied "retroactively."

The statute unequivocally instructs that courts apply the statute immediately on its effective date of February 12, 1988. We should interpret this directive to mean that § 401.1 is to be applied both to actions pending in the trial court and to actions pending on appeal on February 12, 1988 and thereafter. Nowhere does the statute restrict the application of its provisions to those agreements executed on or after February 12, 1988.

Obviously, many if not most cases pending on appeal and on the trial level at the time § 401.1 was enacted were cases involving agreements executed prior to February 12, 1988. The legislature, by requiring that the courts immediately apply § 401.1 and by not excepting from the statute those cases involving agreements executed prior to February 12, 1988, has indicated a clear intent to apply § 401.1 "retroactively." This finding is consistent with the legislature's intent that the equitable distribution provisions of the Divorce Code be applied retroactively and the Supreme Court and Superior Court decisions holding that retroactive appli-

cation of those provisions neither violates due process, *see Bacchetta v. Bacchetta,* 498 Pa. 227, 234, 445 A.2d 1194, 1195 (1982), nor constitutes an unconstitutional impairment of contract, *Nuttall v. Nuttall,* 386 Pa.Super. 148, 562 A.2d 841 (1989).

Next, I will consider whether retroactive application of § 401.1 in particular violates due process considerations. It is within the state's police power to provide for the orderly dissolution of marriages. *Bacchetta v. Bacchetta,* 498 Pa. at 232, 445 A.2d at 1197. Just as the legislature is permitted to oversee the distribution of the parties' property upon divorce, it is equally empowered to permit the parties to come to an independent agreement about property distribution and other divorce related matters and to restrict the court's involvement with these agreements. To determine whether the state's police power is being exercised in a constitutional manner, we balance the interests of the parties to determine if retroactive application would be unreasonable. *Krenzelak v. Krenzelak,* 503 Pa. at 382, 469 A.2d at 991.

> Traditionally, retrospective laws which have been deemed reasonable are those which " 'impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted.' "

*Krenzelak v. Krenzelak,* 503 Pa. at 382–383, 469 A.2d at 991 *citing Smith v. Fenner,* 399 Pa. 633, 641, 161 A.2d 150, 154 (1960).

Specifically, with regard to contracts, the Pennsylvania Supreme Court has held:

> Any law which enlarges, abridges, or in any manner changes the intention of the parties *as evidenced by their contract,* imposing conditions not expressed therein or dispensing with the performance of those which are a part of it, impairs its obligation, whether the law affects the validity, construction, duration, or enforcement of the contract[.] [emphasis supplied].

. . . .

The *amount* of impairment of the substantive obligation of a contract is immaterial. Any deviation from its terms, however slight, falls within the meaning of the constitution[.] [emphasis in original].

*First National Bank of Pennsylvania v. Flanagan,* 515 Pa. 263, 270, 528 A.2d 134, 137 (1987) *citing Beaver County Building and Loan Ass'n v. Winowich,* 323 Pa. 483, 492–493, 187 A. 481, 485 (1936). Retroactive application of § 401.1 raises two concerns: whether court ordered modification is a substantive right of the parties' agreement, and whether permitting the court to enforce divorce agreements which are not made part of a divorce decree and under prior law could only be enforced if the contract alters the intent of the parties as expressed by their agreement. A review of § 401.1 demonstrates that the provision does not impair contractual obligations, interfere with vested rights or unconstitutionally vary the remedies available under the parties' divorce agreement.

First, retroactive application of § 401.1 does not interfere with any substantive rights of the parties in this case. Although § 401.1 prohibits modification while prior law, under certain circumstances, permitted it, there is no contractual obligation or vested right to modification of the parties' independent agreement for support. Court-ordered modification of a support order does not become relevant until there has been a material change in the parties' circumstances. Even then, it is within the trial court's discretion to grant modification if it is sought by one of the parties.

Moreover, if there were a "right" to modification, this right would not be impaired by § 401.1. Where the parties have expressed a clear and unambiguous intention on the face of their agreement that the agreement shall be subject to modification by the court, modification by the court is permitted. *See* 23 P.S. § 401.1(c). Agreements relating to child support, visitation and custody may be modified regardless of the terms of the parties' agreement. *See* 23

P.S. § 401.1(b). *Cf., Bell v. Bell, supra,* Montemuro, J., dissenting, 390 Pa.Super. at 538–540, 568 A.2d at 1303–1305. Accordingly, the legislature has exempted from its general rule of precluding modification those cases in which the intent of the parties, as evidenced by their agreement, could conceivably be affected by this legislation. Consistent with prior caselaw, agreements subject to modification may also be enforced by the court under the Divorce Code.

Second, while court enforcement of non-merged, non-modifiable agreements under the Divorce Code is a change in prior caselaw to the extent that before § 401.1, non-merged agreements could only be enforced in contract, *see Lipschutz v. Lipschutz,* 391 Pa.Super. 537, 543–45, 571 A.2d 1046, 1050 (1990) *citing Dechter v. Kaskey,* 379 Pa.Super. 45, 549 A.2d 588 (1988); *see generally Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988), this alteration in the manner in which divorce agreements may be enforced is not unconstitutional. The legislature may vary the remedies available to a party so long as the subsequent remedies are equally adequate and efficacious as the remedies which could have been obtained under the parties' agreement. *See Beaver County Building and Loan Association v. Winowich, supra,* 323 Pa. at 492–494, 187 A. at 485–486. Enforcement of divorce agreements under the Code does not abridge the manner of enforcement which would otherwise be available under contract. Therefore, this change does not raise constitutional concerns.

Section 401.1 eliminates the complexity of prior caselaw in determining whether an agreement is modifiable. Most important, it permits the courts to enforce the parties' agreement under the Divorce Code, consistent with the Code's general purpose to effectuate economic justice between the parties, as it is often the economically weaker spouse who is most harmed when the terms of the parties' agreement are not honored and it is also that spouse who is least able to seek redress in the courts. In addition, this provision furthers this Commonwealth's strong policy of permitting the parties to amicably resolve their own affairs.

Balancing the interests of the parties, whose substantive rights remain unaffected by this legislation, I would conclude that "retroactive application" of § 401.1 is both reasonable and constitutional.

The case before us presents the type of contradictions which under prior law would have presented a perplexing problem. Despite these contradictions, the disposition required under § 401.1 is straightforward. The statute makes no distinction between property settlement agreements and alimony, or agreements which have been incorporated or those which have been merged; in either case, the court cannot modify the agreement unless a specific provision of the agreement states otherwise. Here, no provision within the parties' stipulation states that the agreement is subject to modification by the parties. Therefore, pursuant to subsection (c) of § 401.1, this agreement is not subject to modification. Even though the court may not modify the parties' agreement, § 401.1(a) permits the court to enforce this divorce agreement without regard to whether it has been incorporated or merged. Accordingly, the trial court's order requiring that Husband pay $200.00 per month in addition to his support payments to pay off arrearages and directing that Husband's wages be attached was, in my view, entirely proper. Since the parties' agreement was not modifiable by the court, I would reverse the order of June 20, 1989.

There appears to be a slight suggestion in the position of my colleagues on this court that the legislature is without power to correct confusion or uncertainty when it is found, and that only we jurists are capable of providing the necessary guidance to our trial courts and to the members of our family law bar in this area. To the extent that such a thought might be held, I would disclaim any association with it. The simplicity and utility of § 401.1 is to be admired and commended. The members of our profession who worked with our legislators in developing the 1988 reforms to the Divorce Code are to be applauded. I continue to believe that significant contributions to the develop-

ment of the law is not the exclusive domain of our appellate courts but a responsibility and, indeed, a privilege and a duty, shared with our legislature. Section 401.1 is one of those significant contributions. I would hope we permit its intended use before the bramble bush grows any larger.