T.C. Memo. 1996-410


UNITED STATES TAX COURT


ROBERT J. SUGARMAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22440-94.                    Filed September 11, 1996.


Robert R. Elliott, for petitioner.

Linda Ann Love and Joseph M. Abele, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


VASQUEZ, Judge:  Respondent determined deficiencies in petitioner's Federal income tax, an addition to tax, and an accuracy-related penalty as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|---------------------|
| 1989 | $9,259 | $926 | $877 |
| 1990 | 2,428 | --- | --- |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

The issues for consideration are: (1) Whether amounts paid by petitioner to his former wife in 1989 and 1990 were alimony;[1] (2) whether petitioner was entitled to a deduction for Schedule C interest expense for his 1989 taxable year in excess of that allowed by respondent; (3) whether petitioner is liable for an addition to tax under section 6651(a)(1) for the taxable year 1989; and (4) whether petitioner is liable for the accuracy-related penalty under section 6662 with respect to the underpayment of tax resulting from deducting interest expense in excess of that allowed by respondent.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Pineville, Pennsylvania, at the time the petition was filed in this case.

Petitioner Robert J. Sugarman is an attorney. Petitioner and M. Colleen Sugarman (Colleen) were married on April 30, 1983. Subsequent to their marriage, petitioner and Colleen purchased

---

[1] All references to alimony mean alimony as defined by sec. 71(b) of the Internal Revenue Code unless otherwise indicated.

property in Pineville, Pennsylvania (Pineville property), which they owned jointly. At some point in the relationship, marital difficulties arose. In January 1989, petitioner and Colleen entered into a separation agreement (the agreement). The agreement includes, inter alia, custody provisions, support and alimony provisions, and property distribution provisions. The property distribution provisions provide, in part, for the sale of the Pineville property. Those provisions also provide for Colleen to receive specified amounts from the sale and contingent possibilities if no sale is completed. The agreement further states that it "shall be binding and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns." Pursuant to its terms and the subsequent divorce decree, the agreement was incorporated into, but not merged with, the divorce decree. Approximately 1 month later, petitioner and Colleen were divorced pursuant to a decree dated February 10, 1989.

On May 11, 1989, petitioner offered to pay Colleen, in return for her interest in the Pineville property, a lump sum of $20,000, and $20,000 over 2 years in equal monthly installments of $833.33. In July 1989, petitioner and Colleen entered into an agreement entitled "Addendum to Property Settlement Dated January 11, 1989 Between Robert J. Sugarman and M. Colleen Sugarman" (the addendum), which modified the agreement. The addendum was written expressly to replace the provisions of the agreement

which appear as paragraph A under the heading "Property Distribution Provisions."  Pursuant to the addendum, Colleen agreed to convey all of her right, title, and interest in the Pineville property to petitioner and petitioner agreed to pay Colleen $40,000, paid in a lump sum of $20,000 with the balance payable in 24 equal monthly installments without interest.  In order to secure these payments, petitioner was required to, and did, execute a mortgage in favor of Colleen on the Pineville property.

On his Federal income tax returns for the years 1989 and 1990, petitioner deducted the payments made pursuant to the addendum, along with other payments, as alimony.  None of the claimed alimony deductions except those pursuant to the addendum are at issue in this case.  Respondent determined that the amounts paid pursuant to the addendum were part of a property settlement and not alimony payments.[2]

Further, petitioner deducted $28,245.71 as interest expense on Schedule C of his Federal income tax return for the taxable year 1989.  Respondent disallowed $15,646 of the claimed interest expense.  Petitioner admitted at trial that he could not substantiate that his business interest expense exceeded the amount allowed by respondent.

---

[2]  Respondent has not questioned whether the amounts deducted as alimony were actually paid.

OPINION

Section 215(a) permits a deduction for the payment of alimony during a taxable year. Section 215(b) defines alimony as alimony which is includable in the gross income of the recipient under section 71. Section 71(b)(1)[3] defines alimony or separate maintenance as any cash payment meeting the four criteria provided in subparagraphs (A) through (D) of that section. Accordingly, if any portion of the payments made by petitioner

---

[3] Sec. 71(b)(1) provides:

(b) ALIMONY OR SEPARATE MAINTENANCE PAYMENTS DEFINED.--For purposes of this section--

(1) IN GENERAL.--The term "alimony or separate maintenance payment" means any payment in cash if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

fails to meet the four enumerated criteria, that portion is not alimony and is not deductible by petitioner.

Neither of the parties argues that the requirements of subparagraphs (A), (B), and (C) of section 71(b)(1) have not been satisfied. Their disagreement focuses on the provisions of subparagraph (D). Petitioner contends that had Colleen died before the end of the stream of payments, under Pennsylvania law the liability to make the payments would have terminated. Respondent contends that if Colleen had died prior to the end of the payment stream, her estate would have had a valid claim to the continued payments under Pennsylvania law. Therefore, we must look to Pennsylvania law to determine whether petitioner's liability for the payments called for under the addendum terminates at the death of the payee spouse. Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987).

## Pennsylvania Family Law

Section 71(b)(1)(D) requires that the payor spouse must not be liable for any payments under the divorce or separation instrument after the death of the payee spouse. Under Div. Pa. Code sec. 508 (1989), the right to receive alimony pursuant to the alimony and support provisions of the Divorce Code shall cease upon the death of the payee party. Thus, if any of the disputed payments are alimony under Pennsylvania law, that

portion would satisfy the section 71(b)(1)(D) requirement that the payment obligations terminate on the death of the payee spouse.

Div. Pa. Code sec. 104 (1989) defines alimony as "An order for support granted by this or any other state to a spouse or former spouse in conjunction with a decree granting a divorce or annulment." In the instant case, the agreement and subsequent divorce decree provide that the agreement is incorporated, not merged into the decree. Therefore, the agreement retains its identity as a contract and does not become a court order. D'Huy v. D'Huy, 568 A.2d 1289, 1292 (Pa. Super. Ct. 1990); Sonder v. Sonder, 549 A.2d 155, 165 (Pa. Super. Ct. 1988). Additionally, there was no alimony order by the Pennsylvania court that granted the divorce. Because neither the agreement nor the addendum is an "order for support", the payments made pursuant to them are not alimony under Pennsylvania divorce law. Thus, Pennsylvania divorce law does not provide that these payments will terminate on the death of the payee spouse; instead, Pennsylvania law requires that these payments are enforceable as a contract. D'Huy v. D'Huy, supra at 1293 ("The property settlement agreement remains an enforceable contract, not subject to unilateral modification as a court order."). Additionally, Div. Pa. Code sec. 401.1(C) (1989) specifically states:

> In the absence of a specific provision to the
> contrary appearing in the agreement, a provision

regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court.

Therefore, in order for the payments to qualify as alimony within the requirements of section 71(b)(1)(D), Pennsylvania contract law must provide that the payments to be made under the addendum would terminate upon Colleen's death.

Pennsylvania Contract Law and Liability Under the Addendum

"It is settled that, if a property settlement agreement containing support provisions survives as an enforceable contract, it is governed by the law of contracts." Ballestrino v. Ballestrino, 583 A.2d 474, 476 (Pa. Super. Ct. 1990) (citations omitted). The addendum does not explicitly state whether the payments therein described are for 24 months absolute or for 24 months only if Colleen survives. The addendum reads:

Wife will convey all of her right, title and interest in and to the real estate situate [sic] and known as 4532 Smith Road, Pineville, Pennsylvania to Husband for the sum of Forty Thousand Dollars ($40,000.00).

* * * Simultaneously with the delivery of the deed to Husband or his counsel, Husband shall pay wife the sum of Twenty Thousand Dollars ($20,000.00).

The balance of Twenty Thousand Dollars ($20,000.00) shall be paid to Wife in twenty-four (24) equal installments * * *.

The above-quoted section is clear on its face; Colleen is required to perform, and petitioner is required to perform. There are no ambiguities or conditions. This is in contrast to

Cunningham v. Commissioner, T.C. Memo. 1994-474, where the Court found a provision to be ambiguous on the issue of terminability. That provision read as follows:

> "Husband shall pay to Wife for her support and maintenance the sum of $2,500.00 per month on the tenth day of each month, for 142 months".  [Id.; fn. ref. omitted.]

The Court found that the provision was ambiguous because it was unclear whether Husband's liability to pay was for 142 months absolute or whether it was contingent on Wife's need for support and maintenance, and therefore the Court looked to extrinsic evidence to determine intent.  In the instant case, we are faced with no such ambiguity.  To the contrary, the payments were specifically required to be secured by petitioner.[4]  Furthermore, while petitioner contends that the payments were intended to "prop up Colleen", neither the agreement nor the addendum provide for modification of the payments if she should become self-sufficient before the end of 24 months.  Similarly, they did not provide for modification if Colleen's needs remained unchanged at the end of 24 months.  When the terms of the writing are clear

---

[4]  The addendum contains a provision which reads:

> To secure payment of the Twenty Thousand Dollars ($20,000.00) to Wife, Husband shall execute a mortgage on said premises in Wife's favor which shall be delivered to Wife simultaneously with her delivery of the deed to Husband.  Said mortgage shall provide for a 30 day written notice of default prior to foreclosure.

and unambiguous, the Court "need only examine the writing." McMahon v. McMahon, 612 A.2d 1360, 1364 (Pa. Super. Ct. 1992).

Further proof that the payments were intended to be made for 24 months absolute is at page eight of the agreement which contains a clause labeled "AGREEMENT BINDING ON HEIRS" (binding on heirs clause) that provides:

> This Agreement shall be binding and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

Respondent argues that this provision (which also applies to the addendum) provides that if Colleen died before the payments were completed, her estate would have a claim upon the remaining payments. Petitioner contends that this clause only provides that the contract does not terminate upon death, but only the rights that were intended to survive the death of one of the parties would inure to the benefit of the other's estate. If petitioner's position was correct, and the binding on heirs clause did not address the payments due under the addendum, the usefulness of such a clause would be eliminated. Petitioner's argument would lead to the proposition that if a given provision is not explicitly referred to in a binding on heirs clause or expressly written to continue after the death of one of the parties, then an intent inquiry must be made. However, the contract provides that the benefits will inure to the parties' respective heirs, executors, administrators, successors, and

assigns; we see no reason to hold that this provision is without
force.  Colleen relinquished a valuable property interest in the
Pineville property and in return took back an interest in a
stream of payments secured by a mortgage.  The contract provides
for this new interest to inure to the benefit of Colleen's heirs.

As we have already stated, there is no ambiguity in the
agreement or addendum as to the payments in dispute, and
therefore there is no need to look to extrinsic evidence in
interpreting the contract.[5]  Even if there was an ambiguity in
the agreement or addendum, the extrinsic evidence that is in the
record before this Court would favor a finding that the parties
intended a property settlement that would require payments to
continue beyond Colleen's death.

Based upon our analysis of Pennsylvania law and the relevant
provisions of the agreement and addendum, we conclude that the
payments at issue would not have terminated at Colleen's death.
Instead, we find that, had Colleen died prior to the end of the
payment stream, her estate would have had a valid claim for the
remainder of the payments.  Accordingly, we find that
 thesepayments in the nature of a property settlement are not
alimony, and therefore are not deductible.[6]

---

[5]  See Kohn v. Kohn, 364 A.2d 350, 353 (Pa. Super. Ct. 1976)
("parol evidence is admissible to resolve the ambiguity, but not
to alter the terms of the contract.").

[6]  Respondent also argues that petitioner's execution of a
                                              (continued...)

- 12 -

Interest Deduction

Petitioner admitted at trial that, to the extent that his interest deduction exceeded that allowed by respondent, it could only be substantiated by a schedule of expenses. Petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The schedule of expenses, if it had been admitted at trial, is not sufficient to meet this burden, and therefore we find for respondent on this issue. Cluck v. Commissioner, 105 T.C. 324, 338 (1995)(summary schedules did not demonstrate taxpayer's entitlement to claimed deductions).

Addition to Tax Under Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect. The taxpayer has the burden of proof to show the addition is improper. United States v. Boyle, 469 U.S. 241, 245 (1985).

Respondent determined that petitioner's 1989 Federal income tax return was due, after extension, on August 15, 1990. Petitioner has stipulated that he filed his Federal income tax

---

[6](...continued)
debt instrument (i.e., the mortgage) is not a payment in cash as required under sec. 71(b)(1). Because of our finding in the previous sections that the payments would not have terminated upon Colleen's death and are therefore not alimony, this argument is now moot.

return for 1989 on September 19, 1990.  Petitioner did not offer any evidence on the issue at trial nor address it in his briefs. Therefore, we consider him to have conceded his liability for the delinquency addition.

Penalty Under Section 6662(a)

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to one or more of the items set forth in section 6662(b), including negligence or disregard of the rules or regulations.  Respondent determined that a portion of the underpayment of petitioner's tax was due to negligence or intentional disregard of rules and regulations.  Sec. 6662(b)(1).  Petitioner bears the burden of proof on the penalty issue.  Rule 142(a); Neely v. Commissioner, 85 T.C. 934, 947 (1985).

The accuracy-related penalties of section 6662 do not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion.  Sec. 6664(c)(1).

Petitioner conceded at trial that he could not substantiate his interest deduction beyond what had already been allowed by respondent.  Petitioner has offered no evidence that he was not negligent in deducting the excess amount or that he had reasonable cause to do so.  In fact, petitioner's briefs fail to address the negligence issue at all.  We cannot be sure that

petitioner intended to abandon the issue, but in any case respondent's determination of the applicable penalty must be sustained with respect to the underpayment for the improper interest deduction as petitioner has not met his burden of proof on this matter.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.