**In re WIDENER UNIVERSITY, INC., Appellee,**

v.

**ESTATE OF Ruth E. BOETTNER, Deceased and M. Donald Wright, Co–Executor and the Bryn Mawr Trust Company, Co–Executor, Appellees.**

**Appeal of the Boettner Institute Of Financial Gerontology, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 8, 1998.

Filed Feb. 26, 1999.

Reargument Denied April 21, 1999.

Martin A. Heckscher, West Conshohocken, for appellant.

Richard A. Sprague, Philadelphia, for Widener University, appellee.

Before CAVANAUGH, J., HESTER, J. and TAMILIA, J.

HESTER, Judge:

¶ 1 Boettner Institute of Financial Gerontology appeals from the final decree in which the orphans' court awarded Widener University, Inc., Appellee, one million dollars from the estate of Ruth E. Boettner, deceased. We reverse the decree.

¶ 2 On January 13, 1988, Ruth and Joseph Boettner executed identical, reciprocal wills. Their joint estate plan provided that upon the death of the first spouse to die, each of Joseph's nieces was to receive a pecuniary bequest and the remainder estate passed to the surviving spouse. Upon the death of the second spouse, each of Joseph's nieces received an additional amount, which was adjusted to account for the distribution from the estate of the first spouse to die, and Appellee was to receive one million dollars. The remainder estate then passed to Appellant, which is a charitable organization founded by Ruth and Joseph. Thus, there is no question that under the Boettners' unified estate plan, Appellee was to receive only one million dollars, which was to be paid when the second spouse died. Clearly, Appellee was to receive nothing when the first spouse died.

¶ 3 After a fall in January, 1990, Ruth became incapacitated. On October 6, 1994, Joseph made an *inter vivos* gift of $511,083.50 to Appellee. In a letter accompanying the gift, Joseph informed Appellee that the gift would be treated as an advancement of the one million dollar bequest to be made under the wills of Joseph and Ruth, and Appellee's president signed the letter indicating that the gift was an advancement of any amount it was to receive under the estates of either Joseph or Ruth. This letter again establishes that the Boettners' intent was to make a single one million dollar gift to Appellee.

¶ 4 Joseph died on October 27, 1994, and his 1988 will together with five codicils were probated. On February 16, 1995, guardians were appointed on behalf of Ruth due to her incapacity. In order to reduce taxes and since Ruth had significant assets of her own, her guardians filed a disclaimer in Joseph's estate on Ruth's behalf. Due to this disclaimer, Ruth was treated as if she had predeceased her husband, even though she had not. Appellee received notice of the disclaimer and the balance of its one million dollar bequest, or $488,916.50, from Joseph's estate by acquiescing in the legal fiction that Ruth had predeceased her husband.

¶ 5 Matters became complicated after Appellee received the balance of its one million dollar bequest. Appellee had been informed by individuals handling Ruth's affairs that since Appellee had received its one million dollars from Joseph's estate, it would not receive any money from Ruth's estate. In response, Appellee filed a petition in the orphans' court on November 1, 1995, seeking a declaratory judgment that it would be entitled to an additional one million dollars, from Ruth's estate since she actually had survived her husband. The duplicity in Appellee's position is evidenced in the pleadings contained in this petition, wherein Appellee acknowledges that Ruth remained alive but that it would be receiving the balance of its one million dollars from Joseph's estate since she had been treated as predeceased. Ap-

pellee asked the court declare that it would be entitled to an additional one million dollar bequest from Ruth's estate since she had survived her husband.

¶ 6 In response to Appellee's petition, Ruth's guardians filed a petition under 20 Pa.C.S.A. § 5536(b) asking the court to substitute its judgment for that of the incapacitated Ruth and to change her estate plan to reflect her intent that Appellee was to receive a single one million dollar bequest from Joseph and Ruth together. The two petitions were consolidated for disposition.

¶ 7 Unfortunately, Ruth died before disposition of the 20 Pa.C.S.A. § 5536(b) petition. Rather than dismiss both petitions, the court dismissed only the section 5536(b) petition. The orphans' court then issued a decree in the declaratory judgment action awarding Appellee one million dollars from Ruth's estate. The court simply concluded that Ruth's will was clear in that it gave Appellee one million dollars. That is the extent of its analysis. The court failed to address whether Ruth intended in her will to grant Appellee the money in light of its receipt of the funds from Joseph's estate, whether this gift had been satisfied by the bequest from Joseph's estate, whether the one million dollar bequest was partially satisfied by the $511,083.50 advancement made to Appellee on October 6, 1994, and whether Appellee was judicially estopped from making a claim against Ruth's estate by reason of its actions in Joseph's estate. This appeal followed the denial of Appellant's exceptions to the decree.

¶ 8 Our standard of review of an orphans' court decree is established:

> The findings of a judge of the orphans' court division ... must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or lack of evidentiary support.
>
> This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses.... In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported

by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence. However, we are not limited when we review the legal conclusions that the Orphans' Court has derived from those facts.

*In re Estate of Rider*, 711 A.2d 1018, 1020 (Pa.Super.1998). In the present case, the orphans' court decision is freely reviewable since it rested on stipulated facts and merely involved questions of law.

¶ 9 We readily acknowledge that Ruth's will is clear in that it grants Appellee a one million dollar bequest. That rather simplistic approach, however, ignores the facts of this case. We first examine the following document, which was executed by Appellee's president:

> I have today made a gift of property worth $500,000 to Widener University. I have made this gift as an advancement against the total of any gifts to Widener University in my will *and the will of my wife*, Ruth E. Boettner. My wife is incapacitated.
>
> Kindly sign and date this letter to acknowledge that Widener University agrees that my gift today shall be treated as such an advancement and that the total of any gifts in my will *and the will of my wife* will be reduced by $500,000. I understand also that you will submit this agreement to the Board of Trustees of Widener University for formal ratification within thirty days from today, and that you will provide me with a copy of the ratification.

(Emphasis added).

¶ 10 We are puzzled by the orphans' court's failure to acknowledge the existence of this document. By it, Appellee agreed that its bequest under the wills of *both* Ruth and Joseph were reduced by $500,000. Appellee's position is that the gift was not an advancement under Ruth's estate because Joseph made it. The position is ludicrous. In order to receive it, Appellee executed a document agreeing that the money would be considered an advancement against any amount it was to receive from Joseph's estate *or* Ruth's estate. It is a binding agreement. Therefore, the *most* that Appellee legally is

entitled to receive from Ruth's estate is $500,000.

¶ 11 However, we consider this document to be even more significant. We believe that by executing this document, combined with Appellee's position with respect to Joseph's estate, Appellee has acknowledged that it was to receive one, unified bequest of one million dollars from the Boettners.

¶ 12 Initially, we address the issue of intent. Unquestionably, Ruth's intent was for Appellee to receive one million dollars *either* from her husband's estate *or* her estate. We acknowledge that the words of her will are clear. Nonetheless, even when faced with clear wording in a will, those "words ... are not to be viewed in a vacuum but rather *as part of an overall testamentary plan.*" *In re Estate of Rider, supra* at 1020 (emphasis added). *All* of the Boettners' actions with respect to their estate plans lead to the inescapable conclusion that Appellee was to receive a single one million dollar bequest. First, that is the wish expressed in their joint, integrated estate plan. Second, there is the document that Appellee executed that evidences Joseph's intent that the $500,000 was in partial satisfaction of the one million dollar bequest made in both wills. While Appellee maintains that Joseph's will cannot be viewed as part of Ruth's plan since he made numerous codicils to it, we disagree. These joint and mutual wills were executed simultaneously. The fact that Joseph made changes to his will that in no way affected Appellee's bequest does not change the testamentary scheme *as to Appellee* evidenced by the wills executed in 1988.

¶ 13 Furthermore, the doctrine of advancement or satisfaction applies in these circumstances. An advancement is a transfer by the testator during his life in satisfaction of the donee's share in the testator's estate. *See In re Estate of Houston*, 383 Pa. 466, 119 A.2d 304 (1956); *Estate of Bryan*, 340 Pa.Super. 455, 490 A.2d 868 (1985), *rev'd on other grounds*, 513 Pa. 554, 522 A.2d 40 (1987). The intent of the donor is to be established by acts and declarations. *In re Estate of Houston, supra.* Herein, Ruth, through the actions of her guardians, disclaimed her interest in her husband's estate, thereby activating the remainder of the one million dollars due Appellee and effectively "transferring" the money to Appellee. She intended that her actions in disclaiming her interest satisfy Appellee's bequest contained in her will, as evidenced by her and her husband's unified estate plan. Hence, we also agree with Appellant's position that Appellee's bequest was satisfied by Joseph's estate under the doctrine of advancement.

¶ 14 Finally, we are struck by the inherent duplicity in Appellee's position. Its pleadings are replete with inconsistent positions wherein it acknowledges that Ruth was treated as predeceasing her husband for purposes of his estate but that she actually survived her husband, thereby triggering its one million dollar bequest.

¶ 15 Judicial estoppel is a doctrine that prohibits a party from taking a position in a subsequent judicial proceeding that is inconsistent with the party's position in a prior judicial proceeding. *Ballestrino v. Ballestrino*, 400 Pa.Super. 237, 583 A.2d 474 (1990). In Joseph's estate, Appellee participated in the estate distribution and accepted the balance of its bequest based on the legal fiction that Ruth predeceased her husband. While Appellee points out that it did not make the disclaimer, we do not end our inquiry there. Its status as a beneficiary in Joseph's estate resulted solely from its participation in the legal fiction that Ruth predeceased her husband. It took a "position" in that legal proceeding by accepting the money. Furthermore, Appellee executed a document that clearly acknowledged that the Boettners' overall estate plan provided for Appellee to receive a single one million dollar bequest. It would offend notions of equity and fair play for Appellee to overcome the Boettners' clearly stated intent and receive two million dollars. Hence, we reverse the decree and hold that Appellee is not entitled to any money from Ruth Boettner's estate.

¶ 16 Decree reversed.

¶ 17 CAVANAUGH, J., Concurs in the Result.