**In re ADOPTION OF S.A.J.**

**Appeal of: T.L.D. and B.S.D., Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 11, 2001.

Filed March 19, 2002.

Reargument Denied May 23, 2002.

Bernard Mendelsohn, Reading, for appellants.

Jon P. Landis, Reading, for S.S., appellee.

Before CAVANAUGH, STEVENS, and BECK, JJ.

STEVENS, J.

¶ 1 This is an appeal from the order of the Court of Common Pleas of Berks County entered on May 2, 2001, which vacated the Final Decree of Adoption entered on January 31, 2001. Appellant raises four issues on appeal: (1) Whether Appellee had standing to challenge the adoption decree; (2) Whether the trial court erred in failing to find that Appellee was estopped from claiming to be the father of the S.A.J.; (3) Whether the trial court erred in failing to find that the termination of Appellee's visitation privileges by court order was *Res Judicata* to his present claim; and (4) Whether vacating the adoption decree was in the best interests of the S.A.J. Appellee raises one issue on appeal: (1) Whether Appellee should be awarded attorney's fees. We reverse and remand for proceedings consistent with this decision.

¶ 2 S.A.J. was born on February 16, 1989 to Mother, T.L.D., and an unknown father. On November 16, 2000, B.S.D., Mother's husband, filed a petition to adopt S.A.J. The adoption was consented to by Mother and by B.W., who alleged himself to be S.A.J.'s biological father. On January 22, 2001, Appellee, S.S., claiming to be S.A.J.'s natural father, filed a Complaint for Partial Custody. Appellee had previously claimed to be S.A.J.'s father and filed an action seeking custody in 1989, for which partial custody was granted. Mother has admitted to having sexual relations with both B.W. and Appellee during the time of S.A.J.'s conception. Mother sought support payments from Appellee and at the support hearing, Appellee denied being S.A.J.'s father under oath. Thus, Appellee's visitation privileges were suspended, and Appellee had essentially no contact with S.A.J. for the next twelve years.

¶ 3 Mother and Husband, acting under the reasonable belief that Appellee had officially renounced his claim to S.A.J. by denying paternity at the support hearing, had the only other potential father, B.W., consent to the Petition for Adoption. Mother and Husband did not have notice of Appellee's custody complaint until after the adoption proceeding. Mother and Husband filed Preliminary Objections in the custody action brought by Appellee. Appellee filed a Petition to Vacate the Adoption Decree alleging that he was the father of S.A.J. A hearing was held on May 2, 2001, after which the order in question was entered which vacated the adoption decree. A Petition for Reconsideration was denied June 26, 2001. This timely appeal followed. A Pa.R.A.P. 1925(b) statement was not ordered nor was one filed.

■ ¶ 4 Mother and Husband contend that the trial court erred as a matter of law in failing to find that Appellee was judicially estopped from claiming to be the father and entitled to notice and opportunity to be heard in the adoption proceeding, which resulted in the decree being vacated.

■ ¶ 5 We conclude that Appellee is estopped from challenging the adoption of S.A.J. Judicial estoppel is a doctrine that prohibits a party from taking a position in a subsequent judicial proceeding that is inconsistent with the party's position in a prior judicial proceeding. *Widener University v. Estate of Boettner*, 726 A.2d 1059 (Pa.Super.1999) (*citing Ballestrino v. Ballestrino*, 400 Pa.Super. 237, 583 A.2d 474 (1990)). Appellee has taken inconsistent positions before the court. For example, Appellee denied paternity in writing for a child support hearing in the Domestic Relations Section of the Court on May 10, 1990, a prior judicial proceeding, and the denial of paternity is included in the record. However, now Appellee is claiming to be S.A.J.'s biological father. Based on the denial of paternity, Appellee has avoided paying child support for S.A.J.'s entire life. Judicial estoppel is particularly warranted where the party's position was successfully maintained. *Associated Hospital Service of Philadelphia v. Pustilnik*, 497 Pa. 221, 439 A.2d 1149 (1981). Appellee's denial of paternity was successfully maintained by the court, which accepted his denial of paternity and excused him from child support. Thus, this claim should have been barred by the lower court by judicial estoppel. Therefore, we reverse the lower court's order, which vacated the adoption decree.[1]

■ ¶ 6 Appellee has requested that counsel fees be awarded for costs associated with this appeal. Our Rules of Appellate Procedure allow for the imposition of counsel fees if an appellate court finds the appeal to be frivolous or taken solely for delay. Specifically, Pa.R.A.P. 2744 provides the following:

> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including:
> (1) a reasonable counsel fee and
> (2) damages for delay at the rate of 6% per annum in addition to the legal interest,
> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

---

1. In light of the foregoing, we decline to address any of Appellant's remaining issues.

Pa.R.A.P. 2744, 42 Pa.C.S.A. In light of our foregoing analysis, we conclude that Appellant did not raise a frivolous issue. Thus, we decline to assess attorney fees.

¶ 7 Reversed; Remanded; Jurisdiction relinquished.

### DISSENTING OPINION BY CAVANAUGH, J.

¶ 1 I respectfully dissent from the majority's disposition on the basis of judicial estoppel applied against the appellee. Rather, since both appellant-mother and appellee have made conflicting claims regarding appellee's paternity in prior judicial proceedings, I believe it is inequitable to apply the doctrine of judicial estoppel solely against appellee.

¶ 2 The majority holds that since appellee denied paternity in a prior support proceeding, he is judicially estopped from claiming paternity in the instant matter. However, appellant-mother in the prior proceedings made the claim that appellee was the father. In both prior custody and support proceedings, mother maintained that appellee was the father of S.A.J. Mother now holds the position that appellee is not S.A.J.'s father.

¶ 3 A basic tenet of equity is that the party who seeks to invoke it, must have clean hands. "The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue." *Terraciano v. Commonwealth*, 562 Pa. 60, 753 A.2d 233, 237–238 (2000). A court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. *Id.* at 237.

¶ 4 Since mother herself has made inconsistent statements in prior judicial proceedings, involving both custody and support, concerning appellee's parental status, she does not have the requisite clean hands to invoke the doctrine of judicial estoppel against appellee. Either both are estopped, or neither is estopped from taking a position during the instant proceeding which is inconsistent from one taken during prior proceedings.

¶ 5 Judicial estoppel is an equitable, judicially-created doctrine designed to protect the integrity of the courts by preventing litigants from "playing fast and loose" with the judicial system by adopting whatever position suits the moment. *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1192 (2001). However, the integrity of the court is not served by the selective application of the doctrine of judicial estoppel when each party to a proceeding has maintained a previous contrary position.

¶ 6 Regarding the prohibition against "playing fast and loose," the lower court's comments regarding mother's actions bear consideration:

Mother and Mother's Husband could not have been unaware of the solid grounds for S.S.'s claim to paternity and of his intentions to seek a relationship with his biological child; and yet, instead of properly noticing the most likely biological father of the child, Mother and/or Mother's Husband sought out a plausible putative father of the child who would be agreeable to giving up all rights with which Mother might or might not have endowed him. Mother did not notify in this adoption proceeding the man who she had previously claimed to be the father of the child. Indeed, if Mother's testimony can be believed, this adoption was open to challenge on yet another ground; that 'there could have been' yet another man who had sexual relations with her during the relevant period, and yet no notice was given to that man personally, or even, in

the event Mother did not know his name, by publication to an unknown John Doe.

\* \* \* \* \* \* \*

Mother appears to have planned well to preclude S.S. from even having the opportunity for a say in these proceedings and that, likely, in the form of an involuntary termination proceeding. Instead she simply removed him from the process by conveniently finding someone to act as the putative father and consent to the termination of any rights he might have had in the child, if indeed he had fathered same—see, please, the very carefully worded consent executed by B.W. indicating he had been named as the father, and not that he was or claimed to be the father.

\* \* \* \* \* \* \*

If blame be laid to anyone's door, it is to Mother and her husband in not disclosing the full history of the prior and extensive litigation to their hand-picked adoption attorney. In the past this Court has asked searching questions of biological mothers, even in cases of rape or statutory rape, so that when an adoption decree is signed by this Court it can be defended against the world. In the instant case, the biological mother and adoptive father took pains to conceal such information from this Court, and from the man who it appears is the biological father of this child.

Lower court opinion, 6/25/01, at 11–13.

¶ 7 Mother should not be the beneficiary of the application of the equitable doctrine of judicial estoppel given her lack of candor to the court below and her own conflicting statements made in prior proceedings concerning the paternity status of appellee.

¶ 8 My review of the record convinces me that the lower court was without error in vacating the adoption decree. It did so reluctantly, but in recognition that the belated attempts of S.S. to establish paternity were improperly thwarted by the legal machinations, if not outright fraud and deceit, of the mother and her husband. The order should be affirmed, and, therefore, I dissent.